IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE CO. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-774C |
| | ) | (Judge Williams) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the complaint filed by plaintiff, Hartford Fire Insurance Company ("Hartford"), for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. In support of these motions, we rely upon the following brief. In support of the Rule 12(b)(1) motion, we also rely upon the accompanying declaration of the contracting officer, Mr. Raymond Tomori ("Tomori Decl."), which is attached as Exhibit A.

BRIEF

STATEMENT OF THE ISSUES

1. Does the Court possess subject matter jurisdiction to entertain the complaint when Hartford failed to certify its claim, the contracting officer has not issued a final decision, and Hartford's administrative remedies have not been exhausted?

2. Does Hartford have standing to assert another contractor's claims for damages?

3. Do alleged oral understandings with a now-deceased contracting officer give rise to a cognizable claim upon which relief may be granted?

## STATEMENT OF THE CASE

A. Nature Of The Action

Hartford is a surety for Western Sun Enterprises, Inc. (“Western”). The United States Department of Veterans Affairs (“VA”) awarded Western two construction contracts. The first contract pertains to an underground Replacement Steam and Condensate project at the VA Medical Center in Denver Colorado for $443,674 (the “Steam contract”). Compl. ¶ 26, Ex. A. The second contract pertains to a Hot Water Heaters project at the same location for $243,032 (the “Hot Water contract”). Compl. ¶ 27, Ex. B. The VA terminated these two contracts for nonperformance in 2005, and Hartford, as the surety for Western, entered into takeover agreements to complete the work. Compl. ¶¶ 68-70 & Ex. D. Hartford asserts claims against the United States for additional compensation based upon the following theories: unjust enrichment (Count I), breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), quantum meruit (Count IV), and equitable subrogation (Count V).

B. Jurisdictional Facts For Purposes Of Our Rule 12(b)(1) Motion

On or about May 16, 2007, Hartford and Western jointly submitted a request for additional compensation to the contracting officer (“Submission”). Compl. ¶ 77, Ex. E; Tomori Decl. ¶ 3 & attach. 1. Hartford did not certify the Submission. Tomori Decl. ¶ 3 & attach 1. On or about May 21, 2007, the contracting officer, Raymond Tomori, wrote to Hartford’s representative “[a]s a reminder that each claim must be properly certified in order for the Government to consider [it] as a proper claim.” Tomori Decl. ¶ 4 & attach 2. On or about June 22, 2007, Mr. Tomori, wrote to Hartford and its representatives: “The Government has requested an audit of the above contract[s] through Defense Contract Audit Agency. The purpose of the audit is to review the contract, payments and potential claims. They will be

contacting you to review the Contractor's files." Tomori Decl. ¶ 5 & attach. 3. On July 9, 2007, Mr. Tomori wrote to Hartford requesting additional supporting documentation concerning the Submission. Tomori Decl. ¶ 6 & attach. 4.

On November 5, 2007, Hartford filed this action alleging that the contracting officer had not issued a written decision. Compl. at 1 & ¶ 77. As of that date, Hartford had not provided the requested certification, the audit of the two contracts had not been completed, and Mr. Tomori had not issued a final decision concerning the Submission. Tomori Decl. ¶¶ 7-8.

C. Allegations Taken As True Solely For Purposes Of Our Rule 12(b)(6) Motion

The gravamen of the complaint is that a now-deceased contracting officer orally instructed Western to perform the Steam contract using above-ground pipes, despite the express contract terms that provided for the use of less expensive underground pipes, and then a new contracting officer refused to issue change orders to pay for work that varied from the written terms of the Steam contract. Compl. ¶¶ 40-63. The complaint does not identify a breach of the Hot Water contract.

The VA paid Hartford and Western a total of $840,787 upon contracts with a combined value of $686,706. Compl. ¶¶ 86-87, 89-90. Hartford nevertheless seeks an additional $449,348 in damages, of which amount only $166,303 is sought on behalf of Hartford, and $283,045 is sought on behalf of Western.[1] Compl. at 16. Approximately 81 percent of the claimed damages pertain to the Steam contract, and the remainder pertains to the Hot Water contract. See Compl. ¶ 77, Ex. E at 11. Finally, Hartford seeks prejudgment interest of $158,162. Compl. at 16.

---

[1] Hartford's claimed damages ($166,303) consist of the total completion cost ($364,916), minus total payments received ($180,612), minus a credit ($18,000). Compl. ¶ 77 & Ex. E at 11. Western's claimed damages ($283,045) consist of computed overhead and profit ($170,626), plus project costs prior to termination ($702,062), plus project costs after termination ($33,671), plus bond ($17,295) and insurance ($19,564) costs, minus the total payments received ($660,174). Compl. ¶ 77 & Ex. E at 11.

# ARGUMENT

## I. THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RCFC 12(B)(1) BECAUSE HARTFORD DID NOT EXHAUST ADMINISTRATIVE REMEDIES

The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question[,] it [is] incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction."). The jurisdiction of the Court of Federal Claims depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). As a waiver of sovereign immunity, the provisions of the Contract Disputes Act of 1978 ("CDA") are strictly construed. Cosmic Constr. Co. v. United States, 697 F.2d 1389, 1390 (Fed. Cir. 1982); Gregory Lumber Co. v. United States, 229 Ct. Cl. 762, 763 (1982).

### A. Hartford Did Not Certify Its Claim As Required By The CDA

Hartford exclusively relies upon the CDA for its jurisdictional allegations in the complaint. See Compl. ¶ 3. The CDA authorizes a contractor to bring an action directly upon a "claim" in this Court. 41 U.S.C. § 609(a)(1). The Federal Acquisition Regulation ("FAR") defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 33.201. "For claims of more than $100,000," the CDA provides that "the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the

certifier is duly authorized to certify the claim on behalf of the contractor." 41 U.S.C. § 605(c)(1). The FAR further requires that a certification be executed by (i) a senior company official in charge at the contractor's plant or location involved; or (ii) an officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs. 48 C.F.R. §§ 33.207(c)(1), (c)(2).

"[C]ertification plays a serious role in the statutory scheme because it triggers a contractor's potential liability for a fraudulent claim[.]" Skelly & Loy v. United States, 231 Ct. Cl. 370, 376 n.11, 685 F.2d 414, 418 n.11 (1982). "Congress wanted to hold the contractor personally liable, and it considered the best way to do this would be to require contractors to personally certify their claims." United States v. Grumman Aerospace Corp., 927 F.2d 575, 579 (Fed. Cir. 1991) (quoting Ball, Ball & Brosamer, Inc. v. United States, 878 F.2d 1426, 1429 (Fed. Cir. 1989)). It is well settled that the submission of a properly certified claim to the contracting officer is a jurisdictional prerequisite to maintaining a suit under the CDA, and a failure to do so requires that the contractor's action be dismissed.[2] Grumman, 927 F.2d at 579; Ball, Ball & Brosamer, 878 F.2d at 1428; Essex Electro Eng., Inc. v. United States, 702 F.2d 998 (Fed. Cir. 1983); Fidelity Constr. Co. v. United States, 700 F.2d 1379 (Fed. Cir. 1983).

The complaint alleges that Western provided a certification in connection with the Submission. Compl. ¶ 76. The complaint does not allege, however, that Hartford ever provided a certification. See id. Hartford is the plaintiff-claimant in this action and is responsible, by

[2] Although the certification requirement was held to be jurisdictional, Grumman Aerospace Corp., 927 F.2d at 579, with the enactment of the Federal Courts Administration Act, Congress subsequently authorized a contractor to cure the defect of the wrong person having certified the claim, but required the contractor to correct the error prior to entry of judgment. 41 U.S.C. §§ 605(c)(1), 605 (c)(6) (1992). Nevertheless, a contractor's failure to submit any certification at all still precludes a suit from proceeding in the Court of Federal Claims. Sharman Co. v. United States, 2 F.3d 1564, 1569 (Fed. Cir. 1993); Hamza v. United States, 31 Fed. Cl. 315, 323 (1994).

virtue of the takeover agreements, for completion of the Steam and Hot Water contracts. See Compl. ¶ 71 & Ex. D § 1. A performance surety such as Hartford, once it enters into a takeover agreement, becomes a "contractor" within the meaning of the CDA. See Nova Cas. Co. v. United States, 69 Fed. Cl. 284, 290 (2006) (citing 41 U.S.C. § 601(4)); Travelers Indemnity Co. v. United States, 16 Cl. Ct. 142, 153 (1988) ("With the existence of a takeover agreement, therefore, 'the surety, in effect, becomes the contractor, subject to the terms of the new agreement.'") (citations omitted). Hartford therefore is subject to the CDA's certification requirement. 41 U.S.C. § 605(c)(1). Indeed, the takeover agreements expressly require Hartford to "certify" all requests for payment under the Steam and Hot Water contracts. See Compl. ¶ 71 & Ex. D § 5. Mr. Tomori's declaration confirms that Hartford has not done so. Tomori Decl. ¶¶ 3, 7-8 & attach. 2. Hartford's failure to certify its claim is a fatal jurisdictional defect.

B. Hartford Prematurely Filed Suit Before A Final Decision Was Issued

The complaint should be dismissed on jurisdictional grounds for another reason – Hartford failed to exhaust the administrative process. Under the CDA, a plaintiff must exhaust administrative remedies by first submitting the claim to, and obtaining a "final decision" from, the contracting officer. See 41 U.S.C. § 605(a). The FAR provides that a "written decision" must include: (i) a description of the claim or dispute; (ii) a reference to the pertinent contract terms; (iii) a statement of the factual areas of agreement and disagreement; (iv) a statement of the decision itself, with supporting rationale; and (v) a statement identifying the writing as a contracting officer's final decision appealable to this Court. 48 C.F.R. § 33.211(a)(4).

As the complaint alleges and Mr. Tomori's declaration confirms, the contracting officer had not issued a "final decision" as of the date when the complaint was filed. Compl. ¶ 77; Tomori Decl. ¶ 7. The Court therefore lacks jurisdiction to entertain this action unless Hartford

can demonstrate that its claim was deemed denied by inaction of the contracting officer. The 60 day clock for action by the contracting officer, however, never began to run.

"A contracting officer shall, within sixty days of receipt of a submitted certified claim over $100,000," either "issue a decision" or "notify the contractor of the time within which a decision will be issued." 41 U.S.C. § 605(c)(2). "The decision of a contracting officer on submitted claims shall be issued within a reasonable time, in accordance with regulations promulgated by the agency, taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor." 41 U.S.C. § 605(c)(3). After receiving a certified claim, if the contracting officer does not make a decision and does not inform the contractor when a decision will be rendered, the claim is "deemed denied" and the contractor is authorized to file suit. 41 U.S.C. § 605(c)(5). Without either a final decision from the contracting officer, or a "deemed denial" of a contractor's certified claim, the Court does not possess jurisdiction to entertain the suit. Overall Roofing & Constructors, Inc. v. United States, 929 F.2d 687 (Fed. Cir. 1991); Sharman, 2 F.3d at 1569. The Court evaluates whether the CDA's exhaustion requirement has been satisfied based upon the facts that existed at the time the lawsuit was filed. Id.; 41 U.S.C. § 605(a).

Shortly after receiving the Submission, Mr. Tomori, the contracting officer, advised Hartford that (i) a certification was required for consideration of a proper claim; (ii) an audit had been requested to gather information pertinent to Hartford's claims; and (iii) a final decision could not be issued without more information. Tomori Decl. ¶¶ 4-6 & attach. 2-4. Without a proper certification, the 60 day period for issuance of a final decision, or notice of when a final decision would be issued, did not begin to run. See 41 U.S.C. 605(c)(2) (agency action required "within sixty days of receipt of a submitted certified claim over $ 100,000"). In any event, Mr.

Tomori effectively put Hartford on notice that a final decision would issue following receipt of a proper certification and upon the conclusion of the Government's audit, which was "the time within which a decision will be issued." 41 U.S.C. § 605(c)(2)(B).

The wheels of the administrative process are still turning, albeit not as quickly as Hartford would prefer. Rather than submit the proper certifications and await the results of the Government's audit and Mr. Tomori's final decision, Hartford prematurely filed suit. The complaint should be dismissed for lack of jurisdiction.

## II. HARTFORD'S CLAIMS ON BEHALF OF WESTERN SHOULD BE DISMISSED PURSUANT TO RCFC 12(B)(1) BECAUSE HARTFORD LACKS STANDING

Hartford, the surety, asserts claims for $283,045 in damages incurred by Western, the contractor. Established principles of surety law, however, dictate that Harford lacks standing to assert Western's claims for damages.

"Although suretyship is necessarily a three-party relationship, Balboa Ins. Co. v. United States, 775 F.2d 1158, 1160 (Fed. Cir. 1985), there is no privity of contract between the United States and the surety to a government contract, Insurance Co. of the West v. United States, 243 F.3d 1367, 1370 (Fed. Cir. 2001)." Preferred Nat'l Ins. Co. v. United States, 54 Fed. Cl. 600, 603 (2002). "Only two means have been identified through which such a surety can bring itself within the ambit of" the Court's jurisdiction. Id. "First, a surety may assert contract rights of its own arising out of a separate agreement to take over for a defaulting contractor." Id. (citing Home Ins. Co. v. United States, 46 Fed. Cl. 160, 162 (2000)). "Second, a surety may establish a right of equitable subrogation to one of the parties to the bonded contract." Id. (citing Transamerica Premier Ins. Co. v. United States, 32 Fed. Cl. 308, 311 (1994)).

"The doctrine of equitable subrogation allows a party that has satisfied another's debt or undertaken another's obligation to step into the shoes of the original debtor or obligor."

Preferred Nat'l, 54 Fed. Cl. at 604. "Thus, a payment bond surety that has satisfied the claims of unpaid subcontractors and suppliers may proceed against the government as a subrogee of the defaulted prime contractor." Id. "Similarly, because the government itself would have had the right to use any unpaid portion of the contract price to pay subcontractors and laborers, a performance bond surety that takes over or finances completion of a defaulted contract may assert not only the rights of the contractor, but also the government's right to any contract retainage." Id. "Recovery under equitable subrogation is limited to funds held by the government or funds improperly disbursed to a third party, only to the amount of the contract balance." Hartford Fire Ins. Co. v. United States, 40 Fed. Cl. 520, 522 (1998) (citing Westech Corp. v. United States, 20 Cl. Ct. 745, 749 (1990)); accord Balboa Ins. Co. v. United States, 775 F.2d 1158, 1161-63 (Fed. Cir. 1985).

"[A]lthough a surety to a government contract may sue as a subrogee of a party to the original construction contract or may sue on a takeover contract in its own right, it may not sue on the original construction contract in its own right." Preferred Nat'l, 54 Fed. Cl. at 604. Claims by a surety upon the original construction contract fall within "this forbidden zone" and should be dismissed for lack of jurisdiction. Id. (granting 12(b)(1) motion to dismiss performing surety's claims that "fall squarely into this forbidden zone" and "are not cognizable in contract before this court."). Indeed, the Court has not allowed sureties either to sue upon the original construction in their own right or to recover the contractor's alleged damages. Preferred Nat'l, 54 Fed. Cl. at 604; Westech Corp. v. United States, 20 Cl. Ct. 745, 749-50 (1990).

In Preferred Nat'l, 54 Fed. Cl. at 604, the Court dismissed claims by a surety that entered into a takeover agreement. The jurisdictional defect, the Court explained, was rooted in the surety's assertion of a claim upon the underlying contract, rather than upon the takeover

agreement. Id. Similarly in Westech, 20 Cl. Ct. at 749-50, Fireman's Fund (the surety) did not ask for "relief allowable under subrogation, i.e., the recovery of funds held by the government or the retrieval of improper disbursements." Fireman's Fund sought "damages suffered by Westech [the contractor]." Id. at 750. Rejecting these claims, the Court held that "a surety's recovery of such damages suffered by a contractor is simply beyond the scope of equitable subrogation." Id.

Hartford's claims, however denominated, do not trigger the Court's jurisdiction. Hartford seeks to recover Western's alleged losses associated with the Steam and Hot Water contracts ($283,045). The thrust of the complaint is that Western was injured when the scope of work on the Steam contract changed and became more expensive. Western, however, is not a party to this action. Rather than stepping into Western's shoes for the purpose of asserting proper jurisdiction to entertain Hartford's own claims, instead, Hartford is attempting to usurp Western's claims for damages altogether. Hartford cannot recover Western's damages as a matter of law. See Preferred Nat'l, 54 Fed. Cl. at 603-04; Westech, 20 Cl. Ct. at 749-50. Accordingly, the Court does not possess jurisdiction to entertain Hartford's complaint to the extent that it asserts claims, or seeks to recover damages, on behalf of Western.

Hartford nevertheless alleges that, "[a]s the completing surety for Western, Hartford is the rightful assignee of Western's claims under its contracts with the VA." Compl. ¶ 75. Legal conclusions such as this one are not credited for purposes of a Rule 12(b)(1) motion to dismiss. See McEntee v. United States, 30 Fed. Cl. 178, 183 (1993) (quoting 2A James Wm. Moore & Jo Desha Lucas, Moore's Federal Practice, ¶ 12.07[2.-5] (2d ed. 1992)); accord Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (interpreting FRCP 12(b)(6)). Although a surety that is not in privity with the Government may step into a contractor's shoes for jurisdictional purposes and assert the surety's claim, the contractor's own claims for damages are not assigned

to the surety by operation of law, as Hartford incorrectly suggests. See Preferred Nat'l, 54 Fed. Cl. at 604. Hartford also does not allege, as a matter of fact, that a valid assignment agreement exists. Hartford thus lacks standing to assert Western's claims.

## III. HARTFORD'S CLAIMS ON ITS OWN BEHALF SHOULD BE DISMISSED PURSUANT TO RCFC 12(B)(1), RCFC 12(B)(6), OR BOTH

### A. Counts I (Unjust Enrichment) & IV (Quantum Meruit)

The Court's jurisdiction to entertain claims founded upon an express or implied contract with the United States "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." Perri v. United States, 340 F.3d 1337, 1343 (Fed. Cir. 2003) (quoting Hercules, Inc. v. United States, 516 U.S. 417, 423 (1996) (citations omitted); Trauma Serv. Group v. United States, 104 F.3d 1321, 1324 (Fed. Cir. 1997)). A contract implied in law is one "in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice." Int'l Data Prods. Corp. v. United States, 492 F.3d 1317, 1325 (Fed. Cir. 2007). Counts I and IV are claims for unjust enrichment and quantum meruit, which, by their very nature, are theories predicated upon implied in law contracts.[3] See Anderson v. United States, 73 Fed. Cl. 199, 206 (Fed. Cl. 2006) (granting 12(b)(1) motion to dismiss because unjust enrichment claims are based upon contracts implied in law); Cross Country Indus., Inc. v. United States, 231 Ct. Cl. 899, 901 (1982) (same); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1335 (Fed. Cir. 2006) (affirming RCFC 12(b)(6) dismissal of surety's quantum meruit claim, when surety entered into a takeover agreement to complete work on a previously terminated contract, and the takeover agreement was not alleged to be invalid or unenforceable);

[3] A narrow exception has been recognized in situations where the Government contracts for goods or services pursuant to an express contract, but the Government refuses to pay because defects in the contract render it invalid or unenforceable; only then may a quantum meruit claim proceed in the nature of a contract implied in fact. See Perri, 340 F.3d at 1344. This narrow exception is not applicable here.

accord Int'l Data Prods. Corp. v. United States, 492 F.3d 1317, 1325-26 (Fed. Cir. 2007) (affirming dismissal of contractor's quantum meruit claim for lack of jurisdiction). The Court should dismiss Counts I and IV of the complaint for lack of jurisdiction. See RCFC 12(b)(1).

B. Count II – Breach Of Contract

Rule 8(a)(2) requires in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 127 S. Ct. at 1964-65 (citations omitted, interpreting Fed. R. Civ. P. 12(b)(6)); accord Griffin Broadband Communs., Inc. v. United States, 79 Fed. Cl. 320, 323 (2007) (following Bell Atlantic upon RCFC 12(b)(6) motion), appeal pending. "Legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." Figueroa v. United States, 57 Fed. Cl. 488, 497 (2003) (citing Blaze Constr., Inc. v. United States, 27 Fed. Cl. 646, 650 (1993) (quoting 2A James Wm. Moore & Jo Desha Lucas, Moore's Federal Practice, ¶ 12.07[2.-5] (2d ed. 1992))), aff'd, 466 F.3d 1023 (Fed. Cir. 2006). Stating "a claim requires a complaint with enough factual matter (taken as true) to suggest" an entitlement to relief. Bell Atlantic, 127 S. Ct. at 1965.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic, 127 S. Ct. at 1965 (internal citations omitted). "Asking for plausible grounds to infer an" entitlement to relief "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence

of" the claim. Id. "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" an entitlement to relief "reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" [4] Id. at 1966 (quoting FRCP 8(a)(2)). If the plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed." Id. at 1974.

"[F]or a claim to arise under a contract, it must rely upon a clause that authorizes a specific remedy." Brighton Village Assocs. v. United States, 52 F.3d 1056, 1060 (Fed. Cir. 1995). Count II fails to state a claim because it does not identify a clause of a contract – between Hartford and the Government – that was breached. See Preferred Nat'l, 54 Fed. Cl. at 603-04.

Hartford fails to identify any provision of the Hot Water takeover agreement or the Hot Water contract itself that allegedly was breached by the Government and, in fact, does not allege any breach of these agreements at all. See Compl. ¶¶ 96-103. Count II should be dismissed to the extent that it relies upon these agreements as the predicate for the breach of contract claim.

As for the Steam contract between the Government and Western, Hartford alleges the Government breached that agreement by failing to pay for "changing the Steam & Condensate Project from an underground piping system to an above ground overhead piping system." Compl. ¶ 100. The complaint specifically alleges that Western performed the work to change from underground to overhead piping. Compl. ¶¶ 41, 45, 50, 54, 58. Indeed, none of this piping work was identified in the takeover agreements as being within the scope of Hartford's

[4] In the past, the Court followed Conley v. Gibson, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), which for 50 years stood for the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The United States Supreme Court recently held that "this famous observation [in Conley] has earned its retirement" and "is best forgotten as an incomplete, negative gloss on an accepted pleading standard." Bell Atlantic, 127 S. Ct. at 1969; accord Griffin Broadband Communs., Inc. v. United States, 79 Fed. Cl. 320, 323 (2007) (noting that Bell Atlantic abrogated Conley formulation of standard).

responsibilities as the completing surety. Compl. ¶ 71 & Ex. D §1 (incorporating scope of work listed on Ex. A to each takeover agreement). Hartford cannot assert Western's claims for damages upon the Steam contract itself; yet, that is all that Count II of the complaint purports to do. See supra Argument § II. Count II therefore should be dismissed for lack of jurisdiction. See RCFC 12(b)(1). Count II also does not allege a breach of any provision in the takeover agreement concerning the Steam contract. Accordingly, Count II should be dismissed for the additional reason that it fails to state a claim for breach of contract. See RCFC 12(b)(6).

C. Count III – Breach Of Implied Covenant Of Good Faith And Fair Dealing

Count III fails to state a claim for breach of the implied covenant of good faith and fair dealing for four independent reasons: (i) Hartford does not allege a breach of good faith in connection with the takeover agreements; (ii) Hartford does not allege it was denied the benefit of its bargain; (iii) Hartford does not allege malice or a specific intent to injure; and (iv) Hartford does not allege that any contract clause was breached by virtue of any bad faith.

Count III complains about breaches of alleged oral understandings between Western and a now-deceased contracting officer (for above ground piping), which directly contradict the express terms of the written contract (for underground piping). Compl. ¶¶ 22, 39-40, 62, 104-23. Hartford lacks standing to assert this claim on Western's behalf. See supra Argument § II. Hartford fails to allege any breach of the implied covenant of good faith in connection with the takeover agreements to which Hartford is a party. Count III should be dismissed outright. See RCFC 12(b)(1).

Count III also fails to allege facts which, if proven, would show that Hartford was denied the benefit of the bargain in the takeover agreements. "A breach of the covenant of good faith and fair dealing by one party prevents the other party from enjoying the fruits of the bargain."

La Gloria Oil & Gas Co. v. United States, 72 Fed. Cl. 544, 572 (2006) (citing Centex Corp. v. United States, 395 F.3d 1283, 1305 (Fed. Cir. 2005)), aff'd in relevant part and rev'd in part on other grounds sub nom., Conocophillips v. United States, 501 F.3d 1374, 1380 (Fed. Cir. 2007) (affirming dismissal of La Gloria's breach of contract claims because Government complied with the written contract terms). "'The duty applies to the government just as it does to private parties.'" La Gloria Oil & Gas, 72 Fed. Cl. at 572 (quoting Centex, 395 F.3d at 1304). Hartford entered into takeover agreements with the Government and alleges that it was paid more than the unpaid contract balances in those contracts. (See Compl. §§ 70-71, 90 & Ex. D § 2). Hartford thus fails to allege that it was deprived of the benefit of its bargain. See La Gloria Oil & Gas, 72 Fed. Cl. at 572 (granting motion to dismiss claim for breach of implied covenant of good faith).

Furthermore, "[t]here is … a general presumption that government officials act conscientiously and in good faith, and to overcome the presumption contractors must submit 'well-nigh irrefragable proof' of bad faith." D.V. Gonzalez Elec. & Gen. Contrs., Inc. v. United States, 55 Fed. Cl. 447, 457 (2003) (quoting Schweiger Constr. Co. v. United States, 49 Fed. Cl. 188, 199 (2001) (citing Kalvar Corp. v. United States, 211 Ct. Cl. 192, 543 F.2d 1298, 1301-02 (1976))). "Well-nigh irrefragable" means proof by clear and convincing evidence. Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002). "Courts have often equated 'well-nigh irrefragable proof' with evidence of some specific intent to injure the plaintiff." D.V. Gonzalez Elec., 55 Fed. Cl. at 457 (citing Kalvar Corp., 543 F.2d at 1302); accord Am-Pro, 281 F.3d at 1240 ("well-established precedent" provides that "the necessary 'irrefragable proof' has been equated with evidence of some specific intent to injure the plaintiff") (quoting Kalvar).

"[T]o survive defendant's motion to dismiss for failure to state a claim, plaintiff must allege facts which if proved would constitute malice or a specific intent to injure the plaintiff." D.V. Gonzalez Elec., 55 Fed. Cl. at 457 (citing AscoFalcon II Shipping Co. v. United States, 32 Fed. Cl. 595, 604 (1994); Texas Instr., Inc. v. United States, 991 F.2d 760, 768 (Fed. Cir. 1993)). The new contracting officer's alleged refusal to issue change orders (Compl. ¶¶ 62-63) does not even approach this high pleading threshold.[5] See D.V. Gonzalez Elec., 55 Fed. Cl. at 457-58 (dismissing good faith claim alleging contracting officer "failed to make an equitable adjustment during the performance of the contract"); AscoFalcon II, 32 Fed. Cl. at 604 (dismissing good faith and fair dealing claim that alleged contracting officer refused to act on contractor's request for contract amendment); see also Southern Comfort Builders, Inc. v. United States, 67 Fed. Cl. 124, 154-55 (2005) (contractor must produce "clear and convincing evidence" to overcome good faith presumption that attaches to contracting officer's decision not to issue change orders).

---

[5] In Tecom, Inc. v. United States, 66 Fed. Cl. 736, 769-71 (2005), Judge Wolski espoused the minority view that the "presumption of good faith has no application" to good faith and fair dealing claims that are rooted, not in bad faith, but in the implied duties to cooperate and not to hinder performance. Judge Allegra recently observed in North Star Alaska Housing Corp. v. United States, however, that "[i]t is unclear whether Tecom may be squared either with Federal Circuit precedent or the jurisprudential underpinnings of the doctrine, in which performing in good faith and bad faith are often viewed as mutually exclusive." 76 Fed. Cl. 158, 188 n.34 (2007) (citations omitted). Judge Lettow also recently addressed this issue in Rodriquez v. United States and declined to follow Tecom, noting that Tecom "disagreed with opinions that have adopted and applied the clear and convincing evidence standard broadly when analyzing a potential breach of the implied covenant." 69 Fed. Cl. 487, 499 & n.14 (2006) ("For a plaintiff to successfully assert a claim for breach of the implied covenant of good faith and fair dealing respecting a contract with the government, she 'must allege and prove facts constituting a specific intent to injure [the] plaintiff on the part of a government official.'") (citing Texas Instr., 991 F.2d at 768) (other citations omitted). In any event, a number of cases hold that the presumption of good faith applies to a contracting officer's exercise of their discretionary authority to issue, or not issue, a requested change order, which is the conduct challenged here. See Southern Comfort Builders, 67 Fed. Cl. at 154-55; D.V. Gonzalez Elec., 55 Fed. Cl. at 457-58; AscoFalcon II, 32 Fed. Cl. at 604; see also Tecom, 66 Fed. Cl. at 769 (good faith presumption applies to "formal, discretionary decisions" by government personnel); Helix Elec., Inc. v. United States, 68 Fed. Cl. 571, 587 n.30 (2005) (Williams, J.) (citing Tecom).

Finally, the implied covenant of "good faith cannot be construed to give rise to new obligations not otherwise contained in the contract's express terms." Craig-Buff Ltd. P'ship v. United States, 69 Fed. Cl. 382, 388 (2006) (citing Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005)); accord State of Alaska v. United States, 35 Fed. Cl. 685, 704 (1996) (implied covenant of good faith cannot "create by implication an express obligation" when there is no "express substantive obligation" in the contract), aff'd, 119 F.3d 16 (Fed. Cir. 1997) (Table). The implied covenant also "does not form the basis for wholly new contract terms, particularly terms which would be inconsistent with the express terms of the agreement." Jarvis v. United States, 43 Fed. Cl. 529, 534 (1999). The implied duty "must attach to a specific substantive obligation, mutually assented to by the parties," State of Alaska, 35 Fed. Cl. at 704. Although Hartford claims damages for the VA's alleged breach of good faith, Hartford does not allege that the implied duty attached to a substantive obligation that was breached.

For each of these independent reasons, Count III should be dismissed for lack of jurisdiction and failure to state a claim. See RCFC 12(b)(1), 12(b)(6).

D. Count V – Equitable Subrogation

As noted above, Hartford's right to sue for equitable subrogation is limited to the contract amounts. See Hartford Fire Ins., 40 Fed. Cl. at 522 (citing Westech, 20 Cl. Ct. at 749 (collecting cases)). The complaint admits, however, that Hartford has been paid more than the unpaid contract balances that were identified in the takeover agreements. See Compl. § 90 & Ex. D § 2. Unable to assert a claim for unpaid contract balances, Count V in Hartford's complaint fails to state a claim for equitable subrogation and should be dismissed. See RCFC 12(b)(6).

CONCLUSION

For these reasons, we respectfully request that the Court dismiss the complaint.[6]

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Patricia M. McCarthy
Patricia M. McCarthy
Assistant Director

s/Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

March 7, 2008

Attorneys for Defendant

[6] If the Court does not dismiss the entire complaint, a stay of proceedings, pending the results of the continuing administrative process, would be prudent and in the interests of justice and judicial economy. See 41 U.S.C. § 605(c)(5) ("in the event an appeal or suit is so commenced in the absence of a prior decision by the contracting officer, the tribunal concerned may, at its option, stay the proceedings to obtain a decision on the claim by the contracting officer").

CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2008, a copy of foregoing “DEFENDANT’S MOTION TO DISMISS” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court’s electronic filing system. Parties may access this filing through the Court’s system.

s/Douglas G. Edelschick