IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HARTFORD FIRE INSURANCE COMPANY,

Plaintiff

v.

THE UNITED STATES,

Defendant.

No. 07-774C (Judge Williams)

**HARTFORD FIRE INSURANCE COMPANY'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Hartford Fire Insurance Company ("Hartford" or "Plaintiff"), through its counsel, The Hustead Law Firm, A Professional Corporation, respectfully submits its Response to defendant, the United States' ("Defendant"), Motion to Dismiss under Rule 12(b)(1) and Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). In support of its Motion, Hartford relies on the following brief and documents in the attached appendix.

**BRIEF**

**PLAINTIFF'S STATEMENT OF THE ISSUES**

Defendant, the United States has requested the Court to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and for failing to state a claim upon which relief may be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the RCFC. The specific issues before the Court and Plaintiff's position on these issues are as follows:

1. In support of its 12(b)(1) motion, Defendant contends the Court lacks subject matter jurisdiction because Plaintiff failed to exhaust its administrative remedies by not certifying its claim and by filing the subject action before a final decision was issued by the

Department of Veterans Affairs' (the "VA") contracting officer. Plaintiff asserts these arguments fail because defective certification is not valid grounds to strip thisCourt of subject matter jurisdiction. Furthermore, Plaintiff properly certified its claim pursuant to the VA contracting officer's instructions and said certification was executed by Plaintiff's designated representative. Lastly, Defendant failed to respond to Plaintiff's claim within the statutory period provided and therefore, Plaintiff's suit filed after the failure to respond was not premature.

2. Defendant also contends the Court does not have subject matter jurisdiction over this case because Plaintiff lacks standing to bring claims before the Court. In support of its position, Defendant asserts Plaintiff has usurped the claims of its principal, Western Sun Enterprises, Inc. ("Western"), and failed to establish the assignment of Western's claims to Plaintiff. It is Plaintiff's position that these arguments fail because Plaintiff has established that it has a valid assignment of Western's claim under the original contract and as the completing surety, Plaintiff, has a right to assert these claims against the Government. Moreover, under the doctrine of equitable subrogation, a completing surety is not limited to the claims resulting from its takeover agreements with the Government but may assert any and all claims relating to or emerging from the original construction contracts by virtue of assignment and incorporation of said contracts.

3. In support of its 12(b)(6) motion, Defendant contends the Complaint must be dismissed because Plaintiff failed to allege sufficient facts to support is claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and equitable subrogation. These arguments are invalid because Defendant's 12(b)(6) motion has failed to establish that there are no genuine issues of material fact in this case and that Defendant is entitled to a judgment as a matter of law. On the other hand, Plaintiff herein demonstrates that

the facts depicted in the pleadings, affidavits, and documents supporting this response, when construed in a light most favorable to the Plaintiff with all inferences drawn in favor of the Plaintiff, clearly show the existence of numerous genuine issues of material fact, thus, precluding the Defendant from being entitled to a judgment as a matter of law. In summary, Defendant has failed to establish the absence of disputed genuine issues of material facts and is therefore not entitled to a judgment as a matter of law.

4. Furthermore, Defendant maintains Plaintiff's claims for unjust enrichment and quantum meruit are equitable claims not within the Court's jurisdiction. Plaintiff contends that these arguments fail because this Court has jurisdiction to hear both implied and express contracts when they are implied-in-fact and/or are firmly grounded in an existing contract. In this case, Plaintiff's claims relate back to the original contract that was assigned to Plaintiff and incorporated into Plaintiff's takeover agreement with the Government.

## STATEMENT OF THE CASE

On or about September 15, 2003 the VA solicited two bids for mechanical work on the Veteran Affairs Medical Center located at 1055 Clermont Street, Denver, Colorado (the "VAMC"). The first was a solicitation for the steam and condensate project and the second bid solicitation requested a proposal to construct water supply headers for domestic hot and cold water and recirculation water piping and to install domestic water heat exchangers at various locations throughout the VAMC.

As part of each project's solicitation, the VA furnished a narrative description of the contract duration and estimate cost range as well as a limited set of drawings depicting the overall project scope. Western prepared a bid solicitation for both projects but prior to completing its bid proposals, Western arranged to meet with the VA and tour the project sites.

Baca Aff. ¶ 3. During this site visit, the VA's contracting officer technical representative informed Western that the VA wanted to change the piping layout and configuration for the steam and condensate project and instructed Western to submit a bid to construct the steam and condensate project using aboveground overhead piping. Baca Aff. ¶ 4. Thereafter, Western changed its bid for the steam and condensate project to include aboveground overhead piping and submitted the proposal to the VA. Baca Aff. ¶ 4.

After submitting its proposal, Western was summoned to a meeting with the VA's contracting officer and was informed that its bid price to complete the steam and condensate project using aboveground overhead piping was too costly for the VA's budget. Baca Aff. ¶ 5. Despite this budgetary issue, the VA informed Western that it had decided to proceed with the project using aboveground overhead piping but would need Western's help to do so. Baca Aff. ¶ 6. To get around the budget issue, the VA informed Western that it had decided to proceed with the steam and condensate project using aboveground overhead piping but would need Western's help to do so. As such, the VA gave its assurances to Western that it would compensate Western for the additional costs by issuing a series of change orders during the project. Baca Aff. ¶ 6.

Based on the above arrangement, the VA subsequently awarded Western the steam and condensate contract, but did not change the contract scope of work to include the aboveground overhead piping system. On September 30, 2003, Western and the VA signed a contract for the steam and condensate project, wherein Western's scope of work included the installation of an underground piping system for the contract price of $443,674.90. At about the same time, the VA also awarded Western the hot water project for a bid price of $243,032.00.

Hartford provided Western with bonds for both projects and the VA issued its notice to proceed on September 30, 2003. After the notice to proceed was issued, the VA was slow in

providing as-built drawings to Western, delaying the overall design. Baca Aff. ¶ 8. On December 1, 2003, the VA instructed Western that it could begin excavation on the steam and condensate project despite the unavailability of as-built drawings. Baca Aff. ¶ 9.

Thereafter, the VA and Western agreed to change the pipe routing to allow the use of underground trenches for the first fourth of the piping run and thereafter provide aboveground piping adjacent to and between the buildings. As part of this change, Western was required to provide aluminum cladding and insulation over the new piping. Western submitted a contract change order for the installation of the aluminum cladding but it was rejected by the VA. Baca Aff. ¶ 10.

To accommodate the change of scope, Western was required to do much of the aboveground piping work during off-hours and weekends to avoid traffic issues and prevent interference with the VAMC's daily operations. Baca Aff. ¶ 11. These requirements directly contradicted the language in the original bid solicitation indicating all work was to be performed during normal business hours. Once again, Western submitted a contract change order for the additional time and expense for working during off-hours and weekends but this change order was also rejected by the VA. Baca Aff. ¶ 11. Moreover, as the project continued, the VA also requested the installation of additional condensate pumping and monitoring equipment. Change orders for these items were also rejected by the VA. Baca Aff. ¶ 11.

Even though these specific change order requests were rejected by the VA when submitted, Western and Defendant were provided with assurances that payment for work covered therein would be addressed by the VA. Baca Aff. ¶ 6 and Farley Aff. ¶ and Tab 1.

Moreover, all of these change order requests should have been approved based on the VA's verbal assurances at the beginning of the project; however, the VA's original contracting

officer who had given these assurances passed away while the project was under construction. This untimely death greatly impacted Western because it had relied on the original contracting officer's assurances regarding payment for changes in scope that were intentionally not recorded in the original contract. Furthermore, the new contracting officer in charge of the project was reluctant to grant Western any additional funds or time to complete the project.

Without additional funds promised by the original contracting officer, Western was unable to continue its work on the steam and condensate project and subsequently failed to pay its subcontractors. As a result, the subcontractors walked off the job on October 7, 2004 and the VA issued Western a show cause notice regarding its potential contract default. After a series of ineffective letters were exchanged between Western and the VA, on January 24, 2005, the VA notified Hartford that Western was in default on both projects. Later, on February 10, 2005, the VA issued its final decision notifying Western that its contracts were terminated.

After Western's termination, the VA entered into a takeover agreement with Hartford, wherein Hartford agreed to complete the remaining work on both projects. As the completing surety for the contracts, Hartford elected to complete both projects for the VA using Western as its general contractor. Hartford also paid numerous subcontractor claims on behalf of Western.

As the rightful assignee of Western's claims against the VA; Baca Aff. ¶¶ 13-15; Hartford thereafter undertook to settle its claims for additional work and expenses incurred on the project. As part of this effort, Hartford worked with Western and the VA's contracting officer to file a claim and claim certification for each project pursuant to Federal Acquisition Regulations ("FAR") 52.233-1 and FAR 33.207. Even though Hartford and Western followed the required procedures and the VA's contracting officer's specific instructions for filing a claim, the VA refused to accept the claim and thereafter, failed to provide a written decision in response

to the claim. In light of the VA's failure to respond, Hartford subsequently filed this action against the VA in the U.S. Court of Federal Claims.

Based on the above facts, Hartford's Complaint requests relief based the following claims for (1) unjust enrichment, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) quantum meruit, and (5) equitable subrogation.

## ARGUMENT

### 1. DEFENDANT HAS FAILED TO MEET ITS BURDEN FOR DISMISSAL UNDER THE COURT'S STANDARD OF REVIEW

Defendant's motion fails in light of the Court's standard of review for dismissal under RCFC Rule 12(b)(1) and Rule 12(b)(6) because the allegations contained in the Complaint and evidence presented by the Plaintiff are sufficient to invoke the Court's jurisdiction when accepted as true by the Court and all inferences therefrom are drawn in favor of the Plaintiff. Furthermore, Defendant has failed to meet its burden under Rule 12(b)(6) because it has not established the absence of disputed genuine issues of material facts and therefore it is not entitled to a judgment as a matter of law.

### A. Dismissal Under Rule 12(b)(1)

When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court must accept as true the facts alleged in the Complaint, construe such facts in the light most favorable to the pleader, Patton v. United States, 64 Fed.Cl. 768 (2005); cited by Ezenia!, Inc. v. U.S., 80 Fed.Cl. 60, 63 (2008), and draw all inferences in favor of the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746 (Fed.Cir.1988); cited by Jordan v. U.S., 77 Fed.Cl. 565, 567-8 (2007).

In the case at hand, Plaintiff has asserted facts alleging: (1) privity of contract between Plaintiff and Defendant, (2) contract implied-in-fact, Baca Aff. ¶¶ 4-6, (3) an assignment of the original contract from Western to Plaintiff, Baca Aff. ¶¶ 13-15, (4) entitlement of Plaintiff to enforce terms of the original contracts through their incorporation by reference into signed takeover agreements between Defendant and Plaintiff, Compl. Exhibit D – Takeover Agreements, (5) change in scope of the original contracts warranting an equitable adjustment in the contract price Baca Aff. ¶¶ 4-6, (6) breach of contract duty to pay for work performed under the original contract and the takeover agreement Compl. ¶¶ 98-103, and (7) Plaintiff's entitlement to equitable subrogation to name just a few. When these facts, as well as inferences taken therefrom, are viewed by the Court as true and in a light most favorable to Plaintiff, there can be no doubt the Court has jurisdiction over the case at bar.

B. Dismissal Under Rule 12(b)(6)

The standard for dismissal under Rule 12(b)(6) parallels the standard for review of jurisdictional issues under Rule 12(b)(1). Baird v. United States, 71 Fed.Cl. 536, 542 (2006). However, where "matters outside the pleading" are before the Court on a motion to dismiss for failure to state a claim, the Court regards the motion as one for summary judgment. Rule 12(b) provides: If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in RCFC 56. Jordan v. U.S., 77 Fed.Cl. 565, 568 (2007). In this case, Defendant has submitted and the Court has accepted a declaration and several letters from the VA's contracting officer in support of its motion.

Under these circumstances, Rule 12(b) directs the Court to provide the parties with "a reasonable opportunity to present all material made pertinent to such a motion by RCFC 56." District of Columbia v. United States, 67 Fed.Cl. 292, 301 (2005). Under Rule 56, the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); cited by Jordan v. U.S., 77 Fed.Cl. 565, 568 (2007).

"When the government submits affidavits and evidence in support of its RCFC 12(b)(1) motion, our court is not confined to these materials in ruling on the motion, but must provide the plaintiff with the opportunity to submit all available evidence supporting its jurisdictional allegations." Reynolds v. Army and Air Force Exchange Service, 846 F.2d 746, 748 (Fed. Cir. 1988); cited by Forest Glen Properties, LLC v. U.S., 79 Fed.Cl. 669, 677 (2007). To this end, Plaintiff has provided its own set of documents in support of its response to Defendant's motion, including but not limited to, the Affidavit of Casie Cde Baca, Affidavit of Lyn R. Farley, the exhibits thereto and other relevant documents.

Under the above standard of review, the burden to establish the absence of disputed genuine issues of material fact in this case belongs to Defendant; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); since it is the moving party. This initial burden may be discharged, however, if Defendant can demonstrate "an absence of evidence to support the nonmoving party's case." Buesing v. United States, 42 Fed.Cl. 679, 693 (1999) (citing Celotex, 477 U.S. at 325, 106 S.Ct. 2548). If Defendant succeeds, "the burden

then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists[.]" Id. (citations omitted); cited by Jordan v. U.S., 77 Fed.Cl. 565, 568 (2007).

Defendant in this case has failed to comply with the procedural requirements of Rule 56 and likewise has failed to establish the absence of disputed issues of material fact. To the contrary, Plaintiff has demonstrated that this case is filled with disputed material facts, including but not limited, to Defendant and Plaintiff's differing opinions as to the assignment of Western's claim to Plaintiff, Baca Aff. ¶¶ 13-15, disputes as to scope of the contracts in light of promises made by the VA's now deceased contracting officer, Baca Aff. ¶¶ 4-6, certification requirements set forth by the VA's current contracting officer, Farley Aff. ¶¶ 7-20, and Plaintiff's compliance with the certification requirements and those set forth under the applicable statutes.

In light of these disputed issues of material fact, Defendant's burden has not shifted to Plaintiff in this case. Even though the burden has not shifted to the Plaintiff, it has herein provided numerous examples that demonstrate genuine factual disputes exist in this matter.

Because Defendant has failed to meet its burden as set forth by this Court's standard of review its motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) must fail.

2. THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS CASE BECAUSE PLAINTIFF HAS EXHAUSTED ITS ADMINISTRATIVE REMEDIES

Defendant asserts that the Court does not have subject matter jurisdiction over Plaintiff's claims because Plaintiff did not exhaust its administrative remedies. Specifically, the Defendant claims the Plaintiff failed to certify its claim and filed suit before the VA's contracting officer reached its final decision regarding Plaintiff's certified claim. Despite these assertions, the case law cited herein clearly demonstrates that a technical defect in certification is not grounds to divest the Court of its jurisdiction over Plaintiff's claims. Furthermore, the facts in this case show that the VA's contracting officer failed to comply with its statutory obligations to provide a

final decision regarding Plaintiff's claim within the statutory period provided. This same contracting officer also failed to diligently evaluate Plaintiff's claims by failing despite its representations otherwise. Finally, Defendant has failed to explain why Plaintiff's jointly filed claim is invalid under the relevant statutes or why technical defect in the certification of this claim would bar Plaintiff from invoking the jurisdiction of this Court.

A. Plaintiff's Claim and Certification thereof are Valid Under the Contract Dispute Act of 1978 (the "CDA")

Both Defendant and Plaintiff concur that the CDA serves as the guiding authority regarding this case. Both parties also refer to the Federal Acquisition Regulation ("FAR") as well as the Federal Acquisition Circulars ("FAC") as guiding authority regarding the processing of contract claims against the Government as well as the certification thereof. Despite this concurrence, Defendant and Plaintiff have vastly differing opinions as to the interpretation of these laws and how the facts presently before the Court are to be viewed. For its part, Plaintiff strictly contends that it submitted a valid claim to the VA's contracting officer, that the claim submitted was appropriately certified by the Plaintiff's representative, that any claimed defect in the claim certification may be remedied without affecting jurisdiction of this Court, and Defendant failed to respond to Plaintiff's claim within the statutorily required period. Thus, Plaintiff herein asserts that it is in full compliance with the letter of the law and the spirit of the CDA as enacted.

The CDA was enacted by Congress to serve as a means of resolving certain disputes related to public contracts between contractors and the government. 41 U.S.C. § 605(a). The stated purposes of the CDA are to "help to induce resolution of more contract disputes by negotiation prior to litigation; equalize the bargaining power of the parties when a dispute exists; provide alternative forums suitable to handle the different types of disputes; and insure fair and

equitable treatment to contractors and Government agencies." S.Rep. No. 1118, 95th Cong.2d Sess. 7-8 (1978), reprinted in 1978 U.S.C.A.N.N. 5235, 5235; see Pasteur v. United States, 814 F.2d 624, 627 (Fed.Cir.1987) (discussing purpose of CDA and its legislative history); Oroville-Tonasket Irr. Dist. v. United States, 33 Fed.Cl. 14, 23 (1995); as cited by Medina Const., Ltd. v. U.S., 43 Fed.Cl. 537, 546 (1999).

In this case, Defendant does not dispute the fact Plaintiff filed its claim with the VA's contracting officer on May 16, 2007, Tomori Decl. Tab 2 and Farley Aff. ¶ 14. It also does not dispute that the Defendant has yet to respond to this claim. Tomori Decl.¶ 8. Since the CDA does not offer a precise definition of what constitutes a claim, the Court must evaluate each factual situation as a whole in order to determine whether a valid CDA claim has arisen. See Transamerica Ins. Corp. v. United States, 973 F.2d 1572, 1578-79 (Fed.Cir.1992) (applying "logical, common sense analysis" to find contractor's submissions qualified as CDA claims) overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed.Cir.1995); cited by Medina Const., Ltd. v. U.S., 43 Fed.Cl. 537, 546 (1999). While it appears clear that the discretion to evaluate the validity of the CDA claim rests firmly within the Court's purview, the contracting officer in this case unilaterally elected to make this decision on its own. By refusing to recognize Plaintiff's claim without valid grounds to do so, Defendant severely shifted the balance of bargaining power between the parties in its favor. In effect, Defendant completely locked Plaintiff out of, and barred it from receiving fair and equitable treatment by the Government. Furthermore, Defendant has been able to dodge its statutory obligations by indefinitely stopping the clock as it pertains to the administrative procedures under the CDA and FAR.

Pursuant to the original contracts and as dictated by FAR 52.233-1(e) and 41 U.S.C. §605(c)(2), the VA's contracting officer had 60 days from the date of the claim receipt (May 16, 2007, See Tomori Decl. Tab 1) to render its final decision regarding the claim or notify the contractor of the date by which the decision would be made. The VA failed to make its final decision within the time period set forth in the contracts and likewise did not provide a date by which its final decision would thereafter be made. Since "**any failure** of the contracting officer to issue a decision with the required time periods will be deemed as a decision by the contracting officer denying the claim, said failure to issue a decision, will authorize the contractor to file an appeal or suit on the claim" [emphasis added]. FAR 33.211(e). As such, Plaintiff's right to file this action accrued sixty days after May 16, 2007. Thereafter, Plaintiff by right could file suit against the Defendant, having exhausted its administrative remedies. Since Plaintiff waited until after the 60-day period had expired before filing this action, its suit cannot be considered premature. As such, this Court does have jurisdiction over this matter because Defendant failed to render a final decision regarding Plaintiff's claim within the statutory period.

While it is true "the contracting officer shall have no obligation to render a final decision on any claim exceeding $100,000 which contains a defective certification;" See FAR 33.211(e); it is equally true that a "failure to certify **shall not be deemed** to be a defective certification" [emphasis added] FAR 33.201. In this case, Defendant has unequivocally stated that its reason for placing Plaintiff's claim on hold was for lack of certification and not because the certification failed to comply with the law. Thus, allegations by the Defendant indicating Plaintiff failed to provide a certification at all may not be deemed a defective certification. 48 C.F.R. § 33.201. Medina Const., Ltd. v. U.S., 43 Fed.Cl. 537, 547 (1999).

Furthermore, "a defective certification shall not deprive a court or an agency BCA of jurisdiction over that claim;" FAC 33.207(f); and may be corrected at any time before final judgment is entered. 41 U.S.C. § 605(c)(6). Therefore, a "technically deficient" certification neither prevents a contractor from stating a claim nor precludes this Court's jurisdiction over the matter [quotations added]. Hamza v. United States, 31 Fed.Cl. 315, 323 (1994); cited by Medina Const., Ltd. v. U.S., 43 Fed.Cl. 537, 547 (1999). Thus, the Court's evaluation of this matter must be focused on the claim and not the certification as indicated by the Defendant.

In its motion to dismiss, Defendant does not contend Plaintiff failed to state and/or file a claim, but rather contends Plaintiff failed to exhaust administrative remedies by failing to certify its claim. See Motion to Dismiss p. 2 (On or about May 16, 2007 Hartford and Western jointly submitted a request for additional compensation to the contracting officer). This distinction is verified by the contracting officer's declaration stating that he reminded Plaintiff, "each claim must be properly certified in order for the Government to consider it a proper claim." Mot. to Dismiss p. 2, citing Tomori Decl. ¶ 4. As demonstrated herein, this statement is not a true recitation of the plain letter of the law and is not grounds upon which to reject a claim.

Although Plaintiff asserts the certification accompanying its claim was valid as filed, even if the certification was "technically defective" or missing, as alleged by the VA's contracting officer, such a defect does not free the contracting officer from its obligation to provide a written final decision[1] within a reasonable time; FAR 33.211(d); or divest the Court of its jurisdiction. See Hamza v. United States, 31 Fed.Cl. 315, 323 (1994) (Although certification

[1] Pursuant to FAC 33.211, the contracting officer is required to: (1) Review the facts pertinent to the claim; (2) Secure assistance from legal or other advisors; (3) Coordinate with the contract administration office or contracting office, as appropriate; and (4) **prepare a written decision** [emphasis added]. The written decision must include: (1) as description of the claim or dispute; (2) reference to the pertinent contract terms; (3) statement of the factual areas of agreement and disagreement; (4) statement of the contracting officer's decision, with supporting rationale. The written decision must also substantially follow the form and language provided in FAC and indicated that, "Instead of appealing to the agency board of contract appeals, contractor may bring an action directly in the United States Court of Federal Claims… within 12 months of the date [of the] decision."

is an essential element of a CDA claim, a defect in the certification of a claim does not deprive this court of jurisdiction over that claim. 41 U.S.C. §§ 605(c)(1), 605(c)(6) (1988 & Supp. IV 1992). Furthermore, in cases where "technical defects" do exist, 41 U.S.C. §605(c)(6) provides a plaintiff with the opportunity to correct a defective certification anytime before the entry of a final judgment by the Court. See Hamza v. United States, 31 Fed.Cl. 315, 323 (1994).

In the case at bar, Plaintiff and its assignor; Baca Aff. ¶¶ 13-15; Western, submitted a joint claim that was accepted as such by the VA's contracting officer. Tomori Decl. ¶ 3. See also Tomori Decl. Tab 1 (May 16, 2007 letter to Mr. Raymond Tomori stating, "[p]lease find attached to this letter, a revised claim filed jointly by The Hartford and Western Sun Enterprises.") Prior to submission, the VA's contracting officer had requested several changes to be made to the joint claim. Pursuant to the requests found in the VA's contracting officer's March 13, 2007 letter, see Farley Aff. Tab 3; the final version of the claim included a certification for each contract. See Tomori Decl. Tab 1, stating, "This version contains a breakdown of damages between the projects and contains certifications as requested by your previous request." Also in response to this letter, Plaintiff's consultant, Mr. Lyn R. Farley, met with the VA's contracting officer to discuss how to certify Plaintiff's claims. Farley Aff. ¶¶ 7-20. During that meeting, the contracting officer contacted counsel by phone and they jointly instructed Mr. Farley on how to certify Plaintiff's claims. Farley Aff. ¶ 8. The contracting officer and counsel even went as far as to provide Mr. Farley with precise language to use for the certifications. Farley Aff. ¶ 18.

Thereafter, Mr. Farley had several other conversations with the VA's contracting officer regarding the claim and certification. Farley Aff. ¶¶ 7, 17 and 18.. At no time did the contracting officer ever instruct Mr. Farley that Plaintiff needed to file its own claims separate

and apart from any claim filed by its assignor, Western. Farley Aff. ¶ 20. In fact, the contracting officer instructed Mr. Farley that he wanted to consolidate the claims into one filing and list the adjustment amounts requested for each contract separately, so all the issues relating to the two contracts could be addressed at the same time. Farley Aff. ¶ 9. It was only after Plaintiff's first draft claim submission that the contracting officer told Mr. Farley that a claim certification would need to be completed for each contract. Farley Aff. ¶¶ 12 and 14. In keeping with these wishes and reminders, Mr. Farley revised his original joint claim submission on behalf of Plaintiff and its assignor, Western, and listed the amounts requested for each contract separately within that joint claim. Farley Aff. ¶ 14.

In light of the numerous discussions referenced above, there can be no doubt Plaintiff put forth a good faith effort to comply with the wishes of the VA's contracting officer and provide a properly certified claim.[2] The certifications were signed by Mr. Casie Cde Baca, president of, and authorized representative for Western. See Tomori Decl. Tab 1. Mr. Baca also served as Plaintiff's authorized representative, being designated as such in paragraph six of the takeover agreements signed by the VA, Western and Plaintiff. See Compl. Exhibit D, Takeover Agreement ¶ 6 ("The Surety's designated representative is Mr. Casie Cde Baca"). This should have been sufficient given 48 C.F.R. § 33.207(e) only requires the certification to "be executed by a person duly authorized to bind the contractor **with respect to the claim**" [emphasis added].

Even if the Court concludes Mr. Baca cannot be considered an authorized representative of Plaintiff, as defined under FAR 33.207, this is just the type of "technical defect" Congress considered as curable when it created 41 U.S.C. §605(c)(6), given Plaintiff's good faith efforts to provide a responsive certification in the first instance. See Hamza v. United States, 31 Fed.Cl.

[2] Defendant correctly states that Plaintiff is seeking prejudgment interest on its claim; however, certification does not bar proof of higher damages and recertification is not required. Tecom, Inc. v. United States, 732 F.2d 935, 937 (Fed.Cir.1984); J.F. Shea Co., Inc. v. United States, 4 Cl.Ct. 46, 54-55 (1983).

315, 324 (1994); see also Hamza at 323 (Congress sought to allow contractors to cure "technically defective" certifications-defective as a result of innocent mistake-in order "to avoid repetition of the entire administrative claims process and waste of judicial ... resources." H.Rep. No. 102-1006, 102d Cong., 2d Sess. 28, reprinted in 1992 U.S.C.C.A.N. 3921, 3937. Examples of "technically defective" certifications that may be cured include: certification with each document submitted as part of the claim when all claim documentation is not submitted simultaneously[;] missing certifications when two or more claims not requiring certification are deemed by the court or board to be a larger claim requiring certification[;] and **certification by the wrong or incorrect representative of the contractor (when the person making the certification was authorized by the contractor to certify on its behalf)**) [emphasis added].

The above arguments aside, Plaintiff understands certification is an important part of any claim against the Government and is used to facilitate settlements based upon a truthful submission of the contractor's costs. Ingalls Shipbuilding, Inc. v. O'Keefe, 986 F.2d 486, 491-93 (Fed.Cir.1993) (detailing legislative history behind certification requirement); cited by Medina Const., Ltd. v. U.S., 43 Fed.Cl. 537, 547 (1999). Certification discourages the submission of fraudulent or inflated claims by making contractors liable for fraudulent representations. J & E Salvage Co. v. United States, 37 Fed.Cl. 256, 263 (1997), aff'd, 152 F.3d 945 (Fed.Cir.), cert. denied, 525 U.S. 827, 119 S.Ct. 76, 142 L.Ed.2d 59 (1998); Fischbach and Moore Int'l Corp. v. Christopher, 987 F.2d 759, 763 (Fed.Cir.1993)(determining that certification requirement "trigger[s] a contractor's potential liability for a fraudulent claim under section 604 of the [CDA]") (citation omitted). While the Defendant has not alleged fraud in this matter, Plaintiff would have gladly provided its own certification for the joint claim at the time of its submittal if the contracting officer had only clearly articulated its wishes at the time. Although Defendant

has never cited any authority supporting its position that Plaintiff's claim and certification are not "proper" as filed, Plaintiff has nevertheless taken measures to remedy any perceived "technical defects" by submitting an amended certification to the VA's contracting officer. Thus, Defendant's certification defect argument is now moot. Farley Aff. ¶ 22 and Tab 6.

3. PLAINTIFF HAS STANDING TO SUE THE GOVERNMENT BECAUSE IT IS A PROPER PARTY TO THIS LITIGATION

Defendant contends Plaintiff lacks standing because it: (1) is precluded from asserting the claims of its principal, (2) is not the true injured party in this matter, and (3) has failed to properly allege facts indicating a valid assignment of the original contractor/principal's claims to Plaintiff. The facts in this case indicate a different conclusion. Plaintiff is not precluded from asserting the claims relating to the original contract because as the completing surety it stepped into the shoes of the original contractor under the terms of the original contract and its takeover agreement with the Government as well as pursuant to the doctrine of equitable subrogation. Furthermore, by virtue of an assignment pursuant to the indemnity agreement between Plaintiff and Western, Plaintiff may assert any and all the rights of Western as of the issue date of the bond. Baca Aff. ¶¶ 13-15 and Tab 2. Lastly, any claims by the Defendant that Plaintiff is not the truly injured party in this matter are absurd. As Defendant acknowledges in its motion, Hartford has requested over $400,000 to cover its hard costs. See Mot. to Dismiss p. 3. The fact that a portion of these costs began to accrue before the takeover agreement was executed has no bearing on the fact that Hartford was left holding the bill.

A. As the Completing Surety, Plaintiff has Standing to Assert its Principal's Claims

Defendant argues the claims arising from or relating to the underlying original contracts fall into a "forbidden zone" that is off limits to Plaintiff because Plaintiff was not in privity with the Defendant regarding original contracts and cannot sue upon those contracts in its own right.

Mot. to Dismiss p. 9. Furthermore, Defendant proclaims that Plaintiff's rights under the doctrine of equitable subrogation are limited as to the express amounts dictated in the takeover agreements and totally vitiated regarding claims asserted under the original contract. In support of these positions, Defendant cites the Court's rulings in Preferred Nat'l Ins. Co. v. United States, 54 Fed. Cl. 600 (2002) and Westech Corp. v. United States, 20 Cl. Ct. 745 (1990). These cases however, can be differentiated and distinguished from the case at bar and in fact support Plaintiff's assertion of claims under the doctrine of equitable subrogation.

*i. Westech Corp v. United States*

In Westech, the prime contractor's surety, Fireman's Fund, stepped in on behalf of its principal to pay Westech's subcontractors when Westech was experiencing cash flow problems. Thereafter, Westech was terminated by the Government, which requested Fireman's Fund to resume work on the project in short order. The surety was not able to comply within the Government's timeframe and the remainder of the contract was awarded to another company with Fireman's Fund being assessed for the reprocurement costs in excess of the original contact price. Based on these facts, the Fireman's Fund was precluded from bringing a CDA claim under its principal's contract because it lacked standing in light of the fact that it did not execute a takeover agreement with the Government. Fireman's Fund's rights under the doctrine of equitable subrogation were also limited in this case because the Fireman's Fund performed merely as a payment surety instead of a completing surety.

The facts in Westech differ completely from the case at bar. In the present action, Plaintiff not only served as the completing surety for the project, it also signed the takeover agreements with the Government incorporating its principal's contracts therein by reference. Compl. Exhibit D, Takeover Agreement ¶ 1. As such, the legal conclusions cited by Defendant

are not applicable to the facts in this case. More importantly however, under the present set of facts, the Court in Westech would have concluded the surety had standing to sue. In that case, the Court concluded that "[h]ad Fireman's Fund executed a takeover contract with defendant to complete the contract, it would have standing to sue. In fact, under that circumstance Fireman's Fund could even challenge the propriety of defendant's prior actions…" (citations omitted). Westech Corp. v. United States, 20 Cl. Ct. 745, 749 (1990). Based on these statements, Plaintiff's position as the completing surety under a takeover agreement not only provides it with standing to sue but also opens the door for the surety to press claims and issues relating to Western's interactions with the Government.

*ii. Preferred National Insurance Co.v. United States*

In Preferred, the surety, Preferred National Insurance Co., brought an action against the Government to recoup its expenses incurred in the litigation and settlement of an interpleader action by arguing that the Government's wrongful administration of the contract forced it to assume a suretyship obligation for which it had not contracted. The most important distinction between the Preferred case and the one at bar is that none of the surety's claims in the Preferred case were predicated on its own contractual relationship with the Government. Preferred Nat'l Ins. Co. v. United States, 54 Fed. Cl. 600, 604 (2002). Without a contractual tie, the Court could find no grounds for Preferred to assert unrelated its claims for litigation expenses. And since the claims asserted by surety in the Preferred case were not the type of claims that one of the original parties to the contract would have been entitled to bring, the surety was not entitled to bring them as a subrogee.

Just like in the Westech case above, these facts are wholly different from those presented in the Plaintiff's case. Here, Plaintiff has asserted claims specific to its contractual relationship

with the Government and alleged equitable subrogation stemming from its performance as the completing surety. Given that the claims asserted by the surety in the Preferred case were wholly unrelated to the execution of the construction contract, Defendant's citation to the rulings in this case do not apply to the facts at hand. Under the present set of facts, the Preferred Court would have held that Plaintiff, when acting as "a performance bond surety that takes over or finances completion of a default contractor may assert not only the rights of the contractor, but also the Government's right to any contract retainage (citations omitted) Preferred Nat'l Ins. Co. v. United States, 54 Fed. Cl. 600, 604 (2002). Thus, the Preferred court would have definitely concluded that Plaintiff had standing to assert the rights of Western as well as make claims for the contract balance and retainage.

B. As the Completion and Payment Surety, Plaintiff is a True Injured Party with Standing

Defendant next argues that Plaintiff lacks standing because Western is only the injured party and that Plaintiff is trying to usurp Western's rights by trying to recover damages on behalf of Western. While Western may have been injured by the Government, Plaintiff is clearly the party that footed the bill for the injury. See Tomori Decl. Tab 1. As such, Plaintiff now stands in the shoes of Western and is entitled to assert all the claims of its subrogee against the Government. By virtue of the fact that Plaintiff picked up the tab for both projects, it is now equitably subrogated to the rights of its principal and is considered the appropriate party to bring this action.

*i. Doctrine of Equitable Subrogation*

Equitable subrogation allows one party "who has been compelled to satisfy an obligation (either the payment of money or contract performance) which was the responsibility of another, to a cession of all the remedies which the creditor might have against the other." District of

Columbia v. Aetna Ins. Co., 462 A.2d 428, 430 (D.C.1983). The doctrine finds its basis not in statutory law but in the "judicial commitment" to ensuring fairness and equity among parties. Transamerica Ins. Co. v. United States, 989 F.2d 1188, 1194 (Fed.Cir.1993). Thus, a party's right to subrogation is enforced for the purpose of accomplishing justice, and is "independent of any contractual relations between the parties." Memphis L.R.R. Co. v. Dow, 120 U.S. 287, 301-02, 7 S.Ct. 482, 30 L.Ed. 595 (1887); see footnote 8, Nelson Const. Co. v. U.S., 79 Fed.Cl. 81, 86 (2007). In this case, Plaintiff provided a benefit to the Government by completing the projects for the Government pursuant to the terms of the original contract and its takeover agreement with the Government.

Pursuant to the doctrine of equitable subrogation, either a payment bond or performance bond surety, has standing to sue the Government because the Government "is clearly the primary beneficiary of the surety's obligation and it would be inequitable to allow it to retain monies which it has **previously agreed to pay** for work done." [emphasis added] Universal Sur. Co. v. United States, 10 Cl.Ct. 794, 799 (1986); see also Nat'l Sur. Corp. v. United States, 118 F.3d 1542, 1545-46 (Fed.Cir.1997) ("The surety's rights and obligations are not based on third-party beneficiary concepts, but on principles of suretyship law.") Since Defendant had not alleged that Plaintiff failed or breached its obligation as a completing surety and therefore, it would be inequitable to allow the Government to skip out on payments it previously agreed to make for extra work done on the project. This holds true regardless of whether the agreement was made with Plaintiff or its principal. See Liberty Mut. Ins. Co. v. United States, 70 Fed.Cl. 37, 53 (2006) (For jurisdictional purposes, the focus is on the claim, not the claimant.) Even if Plaintiff was not a party to the original agreement between the Government and its principal, this lack of

privity does not bar Plaintiff from making a claim based on the execution and performance of this agreement.

If a surety to a bonded contract with the Government is unable to establish a valid claim against the Government based on privity of contract, the surety may invoke the doctrine of equitable subrogation. Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136-37 & n. 12, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); cited by Nova Cas. Co. v. U.S., 72 Fed.Cl. 755, 759 (2006). The "[c]ourts have consistently and broadly" held that assignees and subrogees of the contractor have standing to sue the Government in this court. Pearlman v. Reliance Ins. Co., 371 U.S. 132, 138, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); cited by Westech Corp. v. United States, 20 Cl.Ct. 745, 749 (1990)). Based on the performance on behalf of its principal, Western, and the fact that Defendant does not dispute this performance, Plaintiff is entitled to standing before this Court based on the doctrine of equitable subrogation. Furthermore, Plaintiff may likewise assert Western's contractual claims by virtue of its performance.

There exists two instances in which a surety can **succeed to the contractual rights of the original contractor against the Government**: (1) when the surety takes over performance pursuant to the contract; or (2) when the surety finances completion of the defaulted contract. [emphasis added] See Admiralty Constr., Inc. v. Dalton, 156 F.3d 1217, 1222 (Fed.Cir.1998); cited by Nelson Const. Co. v. U.S., 79 Fed.Cl. 81, 90 (2007); see also Aetna Cas. & Sur. Co. v. United States, 845 F.2d 971, 975 (Fed.Cir.1988): cited by Nelson Const. Co. v. U.S., 79 Fed.Cl. 81, 90 (2007) . Further, because there are "rights running directly between the surety and the United States when the performance bond is called upon," the surety clearly has standing to pursue a claim against the Government. U.S. Fire Ins. Co. v. United States, 61 Fed.Cl. 494, 500 (2004). In the present case, Plaintiff as the completing surety succeeds to the all contractual

rights the original contractor, Western might have against the Government. This includes not only Western's right to contract balances and retainage but also Western's right to assert contractually based claims against the Government for breach and contract extras. Based on the arguments and facts presented herein, there can be no doubt that Plaintiff has standing to assert claims against the Government based on the doctrine of equitable subrogation.

C. As the Assignee of Western's Contracts, the Plaintiff has Standing to Assert Claims

Defendant next asserts Plaintiff lacks standing because Plaintiff's claim of assignment is a legal conclusion, not credited for purposes of its Rule 12(b)(1) motion to dismiss. In support of this assertion, Defendant contends that Western's claims for damages are not assigned by operation of law and Plaintiff does not allege, as a matter of fact that a valid assignment agreement exists. Despite Defendant's position on this issue, the facts indicate that Western assigned all of its rights to Plaintiff under its indemnity agreement with Plaintiff and the assignment became valid as of the issue date of the bonds supplied by Plaintiff. Baca Aff. ¶ 15 and Tabs 1 and 2. Assignment documents aside, the Government also assented to this assignment and ratified it by modifying its payment obligations under the terms of the contracts to include payment to Plaintiff instead of Western. Compl. Exhibit D. Moreover, the Government acknowledges the validity of the assignment by actually paying Plaintiff instead of Western after it had stepped in as the completing surety. Mot. to Dismiss pp. 3 and 15.

Notwithstanding any requirements of the Anti-Assignment Acts, "assigned contracts are valid when the assignment takes place by operation of law **or** when the government consents to and recognizes the assignment." Rochester Gas & Elec. Corp. v. United States, 65 Fed.Cl. 431, 437 (2005). Thus, the Government validated Western's assignment by making the contract payable to Plaintiff under the takeover agreement and thereafter making all payments to Plaintiff

instead of Western. See footnote 9, Nelson Const. Co. v. U.S., 79 Fed.Cl. 81, 87 (2007) (The court found a valid assignment existed when the Government acknowledged the assignment and acted pursuant to the assignment, as evidenced by its numerous payments made to the surety.)

In addition, the Government's validation of the assignment of the original contracts is further evidenced by its Notice(s) to Proceed issued to Plaintiff for each contract. See **Exhibit A**. These notices were signed by the VA's contracting officer and direct the Plaintiff to complete work under the contracts initially issued to Western.

Even outside the Government's validation of the assignment, there can be no doubt that Western legally assigned its contract rights the moment the Plaintiff stepped in on its behalf.

Under its General Indemnity Agreement with Plaintiff, Western agreed to:

> "…**assign**, transfer and convey to the Surety:
>
> A. **All rights** of the indemnitors in, arising from or relating to such Bonds or any **bonded or unbonded contracts or any extension, modifications, alterations or additions thereto**;
>
> These **assignments** shall take effect with respect to each Bond as of its execution date, but only in the event of any of the following:
>
> (a) An indemnitor's abandonment, forfeiture or breach of, or failure, refusal or inability to perform, a contract guaranteed by any Bond;
>
> (b) An indemnitor's failure, refusal or inability to pay any bills or satisfy any debts incurred in connection with the performance of a contract guaranteed by any Bond;" [emphasis added]. Baca Aff. Tab 2.

Moreover, Western agreed that:

> "In the event these **assignments** become operative, the indemnitors authorize the Surety, at its sole discretion and to the extent it deems appropriate, but without any obligation on its part:
>
> (i) **To assert and pursue all the assigned, transferred or conveyed rights, actions, causes of action, claims and demands**; [emphasis added]. Baca Aff. Tab 2.

In light of Mr. Baca's statement and the indemnity agreement attached thereto, there can be no doubt that Western assigned to Plaintiff all of its rights to proceed against the Government

for claims under the original contracts. Since Western's rights were properly assigned to Plaintiff, Plaintiff now has standing to bring claims based on Western's rights against the Government. Therefore, Defendant's motion to dismiss for lack of standing must be denied.

4. PLAINTIFF HAS PLEAD SUFFICIENT FACTS TO SUPPORT ITS CLAIMS:

Defendant contends the claims filed by Plaintiff on its own behalf for unjust enrichment and quantum meruit must fail because the Court lacks jurisdiction to hear equitable claims. Furthermore, Defendant asserts that Plaintiff's breach of contract, breach of the implied covenant of good faith and fair dealing, and equitable subrogation cannot succeed because Plaintiff has failed to state a claim upon which relief can be granted. On all of these counts, Defendant has failed to meet its burden under this Court's standards of review and/or has failed to provide a compelling reason for the Court to dismiss any of these claims in whole or in part.

A. Defendant has Failed to Establish an Absence of Disputed Facts Such that it Would be Entitled to a Judgment as a Matter of Law Regarding Plaintiff's Claims

As previously cited herein, the standard of review for the Court to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) requires the Court to accept as true the facts alleged in the complaint, construe such facts in the light most favorable to the pleader; Ezenia!, Inc. v. U.S., 80 Fed.Cl. 60, 63 (2008); and draw all inferences in favor of the non-moving party. Jordan v. U.S., 77 Fed.Cl. 565, 567-8 (2007). Since matters outside the pleadings have been presented to the Court, the Defendant will only be entitled to a judgment under Rule 12(b)(6) if the pleadings and supporting documents, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the Defendant is entitled to a judgment as a matter of law. Jordan v. U.S., 77 Fed.Cl. 565, 568 (2007).

In this case, Defendant has failed in its burden to establish the absence of disputed genuine issues of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the facts, as alleged by the Plaintiff, as well as inferences taken therefrom, are viewed by the Court as true and in a light most favorable to Plaintiff, there can be no doubt the Court has jurisdiction over the case at bar and should not dismiss any of Plaintiff's claims under Rule 12(b)(6).

*i. Plaintiff has Sufficiently Supported its Breach of Contract Claim*

Defendant contends Plaintiff's breach of contract claim is groundless because the claim set forth by Plaintiff is merely a legal conclusion and Plaintiff has failed to allege enough factual matter to suggest it is entitled to relief. Generally, Defendant asserts that Plaintiff must allege facts: (1) sufficient to raise a reasonable expectation that discovery will reveal evidence of the claim, and (2) with enough heft to show the Plaintiff's claims are plausible not just conceivable. Mot. to Dismiss p. 13. Specifically, Defendant infers Plaintiff was required to identify the specific contract clause authorizing the requested remedy and allege a specific breach relating to each of the contracts. In addition, Defendant avers Plaintiff's requests to recover for extra contractual items, including the installation of above ground piping, are barred because those items were not mentioned specifically in the takeover agreement. Mot. to Dismiss p. 9. We shall address the last of these suppositions first.

The Complaint before the Court alleges Western entered into two contracts with the Government, Compl. ¶¶ 24-29, and performed additional work under those contracts, for which Western was not paid. Compl. ¶¶ 56-64. The Complaint further alleges the Government had a duty to pay Western under its contracts; Compl. ¶¶ 98-103; and agreed to pay it for extra work performed under the contracts. Compl. ¶ 22 and Farley Aff. Tab 1. Plaintiff also alleges that it

provided Western with bonds; Compl. ¶ 31 and Baca Aff. ¶ 7; entered into takeover agreements with the Government for both contracts; Compl. ¶ 70 and Ex. D; and was the rightful and legal assignee of Western's claims under those contracts. Compl. ¶ 75. See also Baca Aff. ¶¶ 13-15 and Tab 1. Moreover, Plaintiff alleges it took over as the completing surety for Western and completed Western's obligations under the contracts. Compl. ¶¶ 73-4.

Although the Defendant asserts the Plaintiff is precluded from making claims against the Government that are not based on the takeover agreements, the facts detailed herein clearly show the takeover agreements incorporated the original contracts; see Compl. Exhibit D – Takeover Agreements ¶ 1; and those contracts, and claims originating therefrom, were assigned to Plaintiff in their entirety Baca Aff. ¶¶ 13-15. Moreover, the language found in the takeover agreements and underlying contracts obligate the VA to pay for work performed, regardless of whether it was performed by Western or Plaintiff. Compl. Exhibit D, Takeover Agreements ¶ 3. ("The Parties hereby agree that the **Surety shall be paid in accordance with and in the manner provided by the Contract...** ." [emphasis added]

Even more telling on this subject is the VA's contracting officer's August 19, 2005 letter mandating that any claim pending under the original construction contracts must be addressed outside the parameters of the takeover agreement and giving the Government's assurances that it would provide, at a later date, separate agreements regarding these claims. Farley Aff. ¶ 4 and Tab 1. This letter specifically says, "It is [the VA's] understanding that Western Sun intends to seek relief as provided under their rights of the contract by law. **The Surety Takeover Agreement is not the appropriate venue to address those allegations"** [emphasis added]. "The Supplemental Agreements for additional compensation for changes submitted by Western

Sun prior to the termination will be issued after the execution of the Surety Takeover Agreement." Farley Aff. ¶ 4 and Tab 1.

In light of the above information, it is obvious that the takeover agreements did not include the claims under the original contracts because the VA's contractor officer forbid their inclusion and gave his assurances these claims would be dealt with after the takeover agreements were executed. Therefore, these claims were intentionally left out of the takeover agreement based on the Government's assurances that they would be dealt with through supplemental agreements. Without such assurances, it is unknown if Plaintiff would have agreed to the takeover agreements as drafted.

With regard to the argument that Plaintiff failed to base its breach of contract claim upon specific clauses in both the takeover agreements and the original contracts, the Plaintiff mentioned both documents as the source of the relief it is now seeking; Compl. ¶¶ 24-29 and 70-72; and likewise pleaded duty and breach of thosee agreements. Compl. ¶¶ 97-100, 119, 121. Pursuant to Section 52.232-5 of the contracts and FAR 52.232-5, "the government shall pay the contractor the contract prices provided in this contract."

As cited by May v. U.S., 80 Fed.Cl. 442, 446 (2008), the factual allegations in Plaintiff's Complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Citing Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations and footnote omitted). In this case, Plaintiff has alleged sufficient facts regarding the contracts, takeover agreements and duties thereunder to raise the issue of Plaintiff's right to relief to more than a speculative level. Since Defendant has failed in its burden and Plaintiff has more than met its pleading obligations regarding its right to relief, Defendant's motion must fail.

*ii. Plaintiff has Sufficiently Supported its Breach of the Implied Covenant of Good Faith and Fair Dealing Claim*

Defendant contends that Plaintiff has failed to plead facts required to establish its bad faith claim. Primarily, Defendant asserts Plaintiff did not allege malice, bad faith regarding the takeover agreements, or that it was denied the benefit of its bargain.

As indicated in the Complaint, the seeds of Plaintiff's bad faith claim were sown long before the takeover agreement was executed. And since the original contracts were assigned to Plaintiff and incorporated into the takeover agreements, an allegation of bad faith sounding in one agreement sounds in both.

While Defendant may have paid more than the amounts referenced in the takeover agreements, these amounts strictly excluded extras being sought under the original contracts. See Compl. Exhibits A and B. As indicated herein, the exclusion of these amounts was at the insistence of the VA's contracting officer and with his assurances that a deal would be worked out after the takeover agreements were executed. Farley Aff. ¶ 4 and Tab 1. This set of facts alone smacks of wonton intent to perpetrate damage upon both the Plaintiff and Western in the face of hollow assurances given by the Government. The VA's contracting officer seems to have continued this line of deception when it informed Plaintiff that it had requested an audit of the case in its June 22, 2007 letter. Tomori Decl. ¶ 3 and Tab 3. Contrary to the assertions in this letter, the contracting officer did not request an audit of the contacts until January 31, 2008, well after Plaintiff filed its Complaint on November 5, 2007. See **Exhibit B** - emails from Stacey Bekker – Auditor, Defense Contract Audit Agency.

Under the standard set forth in D.V. Gonzalez Elec. & General Contractors, Inc. v. U.S., 55 Fed.Cl. 447 (2003), in order to maintain a claim of bad faith Plaintiff must allege facts, which

if proven would constitute malice or intent to injure the contractor.[3] In this case, the current VA contracting officer was aware of Western's pre-existing claims for an equitable adjustment and gave his assurances that these claims would be addressed. Farley Aff. ¶ Tab 1. It can be inferred from the contracting officer's knowledge of the amount of the claim that Western and its surety would be injured if the claims were not resolved in an expedited manner. Rather than standing by its promises to address these claims and conduct a timely audit, the contracting officer instead chose to throw up roadblocks to the claim and misrepresent the Government's intentions and actions. This is further demonstrated by the fact that the contracting officer failed to respond to the portion of the pending claim that was certified by Western. See Tomori Decl. Tab 1. In light of this behavior, Plaintiff has more than met its pleading obligations regarding its bad faith claim.[4] See Restatement (Second) of Contracts § 205 cmt. d (1979) (bad faith in performance includes evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance); cited by D.V. Gonzalez Elec. & General Contractors, Inc. v. U.S., 55 Fed.Cl. 447, 457-8 (2003).

Lastly, Defendant contends that the implied covenant of good faith must be attached to substantive obligation, i.e. an unproven oral contract cannot give rise to obligation of good faith. Plaintiff answers this argument by asserting that the obligation of good faith and fair dealing is an implied covenant in every contract; Asco-Falcon II Shipping Co. v. United States, 32 Fed.Cl.

[3] It is difficult to say how specific intent can be determine without detailed discovery regarding the issue; however, bad intent inferred from conduct (primarily the contracting officer's knowledge that failure to pay for benefits received, i.e., a much more expensive system, would injure the party who was not going to be paid for the work) may be sufficient to meet pleading standards as set forth herein and cited in D.V. Gonzalez Elec. & General Contractors, Inc. v. U.S., 55 Fed.Cl. 447 (2003). As such, Plaintiff contends "irrefragable proof" of a government official's bad faith is not required at the pleading stage as would be suggested by Defendant.

[4] Plaintiff understands that a contracting officer's failure to make an equitable adjustment to a contract is not per se bad faith; however, in the case at bar, Plaintiff is alleging the current VA contracting officer was aware of the original VA contracting officer's promises to pay Western but has purposely elected not to honor those promises.

595, 604 (1994); and the Government must deal fairly with the public and perform its duties under [a] contract reasonably and in good faith. See 48 C.F.R. § 1.102-2(c) (2002); cited by D.V. Gonzalez Elec. & General Contractors, Inc. v. U.S., 55 Fed.Cl. 447 (2003). In this case, it is apparent that the VA's contracting officer knowingly and wantonly engaged in acts of bad faith by using evasive tactics, failing to diligently investigate Plaintiff's claims and abusing its power by precluding Plaintiff from asserting a claim. In light of these acts and the bad intent inferred therefrom, Defendant's motion must fail.

*iii. Plaintiff has Sufficiently Supported its Claim for Equitable Subrogation*

Finally, Defendant contends Plaintiff's equitable subrogation claim must fail because Plaintiff has been paid more than contract balances identified in the takeover agreements and thereby, the limits of subrogation have been reached. In making this statement, Defendant has again cited the Court's decision in Westech; however, as differentiated and distinguished above the Westech case dealt strictly with the issue as it applied to a payment surety not a completing surety. Under a payment surety scenario, its stand to reason that the surety should not be entitled to assert the contract claims of its principal when it has not undertaken to perform for the principal. That is not the case here, where the Plaintiff instead served as the completing surety and was assigned all the contract rights and claims of its principal. In light of this distinction and the facts in this case, Defendant's motion to dismiss Plaintiff's equitable subrogation claim must fail.

B. This Court May Exercise its Jurisdiction with Regard to Plaintiff's Quantum Meruit and Unjust Enrichment Claims

Defendant contends claims asserted by Plaintiff on its own behalf must fail because the Court lacks jurisdiction to hear quantum meruit and unjust enrichment claims, except when such claims result from a contract implied-in-fact. While the Court will generally not exercise

jurisdiction over claims in equity, it has carved out exceptions to this rule for contracts implied-in-fact and where claims are grounded within the Court's general jurisdiction.

*i. Quantum Meruit Claim*

In this case, Plaintiff has plead that its assignor, Western, reached an agreement with the VA's now deceased contracting officer. Compl. ¶ 22. At the center of this agreement was the VA's desire to have Western engage in construction activities that would benefit the VA but were not necessarily part of the scope of the express written contract between the parties. Compl. ¶¶ 22 and 23, as well as Baca Aff. ¶¶ 3-6. The result was a contract implied-in-fact wherein the two parties had a meeting of the minds.[5] Unfortunately, before the Government could fulfill its end of the bargain the contracting officer who struck the deal passed away leaving Western and then Plaintiff to complete the work without a written form of assurance regarding payment. Compl. ¶¶ 22 and 59, as well as Baca Aff. ¶¶ 10-12. This unfortunate circumstance however, does not spell the end of Plaintiff's claims. See United States v. Amdahl Corp., 786 F.2d 387, 393 (Fed.Cir.1986), cited by Gold Line Refining, Ltd. v. U.S., 43 Fed.Cl. 291, 295 (1999) (Where a benefit has been conferred by the contractor on the government in the form of goods or services, which it accepted, a contractor may recover at least on a quantum valebant or quantum meruit basis for the value of the conforming goods or services received by the government prior to the rescission of the contract for invalidity. The contractor is not compensated under the contract, but rather under an implied-in-fact contract.) See also Prestex, Inc. v. United States, 162 Ct.Cl. 620, 320 F.2d 367, 373 (1963) ("[e]ven though a contract be

[5] "Even without an express contract, there still may be an implied-in-fact contract if there is a meeting of the minds which can be inferred from [the] parties' conduct showing, in light of the surrounding circumstances, a tacit understanding between them." (citations omitted). "Like an express contract, an implied-in-fact contract requires (1) mutuality of intent to contract; (2) consideration; and (3) lack of ambiguity in offer and acceptance. An express offer and acceptance are not necessary, but the parties' conduct must indicate mutual assent." (citations omitted). Buesing v. United States, 47 Fed.Cl. 621, 630 (2000), citing Total Med. Management, Inc. v. United States, 104 F.3d 1314, 1319 (Fed.Cir.1997).

unenforceable against the Government, ... it is only fair and just that the Government pay for goods delivered or services rendered and accepted under it.") and Eastern Trans-Waste of Maryland, Inc. v. U.S., 27 Fed.Cl. 146, 150 (1992), citing Reynolds v. Army & Air Force Exchange Service, 846 F.2d 746, 747 (Fed.Cir.1988) (The existence of privity of contract is a merits question which cannot be addressed by a Rule 12(b)(1) motion attacking the sufficiency of the complaint.)

Although Defendant disclaims a contract between Plaintiff and the United States, "the law is clear that, for the Court of Federal Claims to have jurisdiction, a valid contract must only be pleaded, not ultimately proven." Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed.Cir.1997); accord Spruill v. MSPB, 978 F.2d 679, 686-87 (Fed.Cir.1992); cited by Guardsman Elevator Co., Inc. v. U.S., 50 Fed.Cl. 577, 581 (2001). In the present case, Plaintiff has met this burden by pleading the existence of an implied-in-fact contract obligating the Government to pay its assignor for work performed outside the scope of its contract terms. This is evidenced by the VA's contracting officer's August 19, 2005 letter, stating "The Surety Takeover Agreement is not the appropriate venue to address those allegations." "**Supplemental Agreements** for additional compensation for changes submitted by Western Sun prior to the contract termination **will be issued** after the execution of the Surety Takeover Agreement." Given that the Court will find an implied-in-fact contract where "the legal requisites of an express contract, offer, acceptance, agreement, consideration, etc.," are fulfilled; Yachts Am. Inc. v. United States, 779 F.2d 656, 661 (Fed.Cir.1985); cited by Guardsman Elevator Co., Inc. v. U.S., 50 Fed.Cl. 577, 581 (2001); Defendant's motion to dismiss Plaintiff's quantum meruit claim must fail. As the Court of Claims noted in Prestex, "ordinary principles of equity and justice preclude the United States from retaining the services, materials, and benefits and at the

same time refusing to pay for them on the ground that the contracting officer's promise was unauthorized, or unenforceable for some other reason." Prestex, Inc. v. United States, 162 Ct.Cl. 620, 320 F.2d 367, 373 (1963).

Furthermore, since Plaintiff's claims under this theory directly relate to claims wherein the Court's jurisdiction is clearly established it is appropriate to hear these claims as well. Guardsman Elevator Co., Inc. v. U.S., 50 Fed.Cl. 577, 584 (2001) (Court of Federal Claims does not lack jurisdiction over quantum meruit claims, where plaintiff grounds its claim for quantum meruit incident to the court's general jurisdiction.) See also Medina Const., Ltd. v. U.S., 43 Fed.Cl. 537, 558 (1999) (Contracts which are implied-in-fact, however, may be within this Court's jurisdiction.); see also United States v. Mitchell, 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); Frank & Breslow LLP v. United States, 43 Fed.Cl. 65 (1999) (suggesting jurisdiction may exist over quantum meruit claims based upon contracts which are implied-in-fact). See also Gold Line Refining, Ltd. v. U.S., 43 Fed.Cl. 291, 295 (1999) (When the government retains benefits in the form of goods or services under a contract determined invalid for failure to comply with certain regulatory requirements or bidding procedures, courts may grant relief of a quasi-contractual nature to the contractor.)

*ii. Unjust Enrichment Claim*

Defendant contends this Court lacks jurisdiction to hear Plaintiff's unjust enrichment claim because the claim invokes a quasi-contract theory in equity. While the Court typically has been reluctant to entertain unjust enrichment claims in the past there have been enough exceptions for this Court to consider the claims based on a contract implied-in-law as alternatively presented by Plaintiff in this case.

There exists a swath of cases, which together, usually under the standard of implied-in-fact contract, appear in practical effect to carve out an exception to the ban on implied-in-law relief against the government.[6] Eastern Trans-Waste of Maryland, Inc. v. U.S., 27 Fed.Cl. 146, 151 (1992). In most of these cases, all or part of an express contract was held to have been invalid, often because unauthorized by the government. United States v. Amdahl Corp., 786 F.2d 387, 393-94 (Fed.Cir.1986) (quoting John Reiner & Co. v. United States, 325 F.2d 438, 440, 163 Ct.Cl. 381 (1963), cert. denied, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964). Such is the case here where the VA's contracting officer has refused to pay Plaintiff on the grounds that the payment was "unauthorized" by the Government. Under this authority, the facts plead by Plaintiff open the door for the Court's jurisdiction in this case. Particularly in light of the VA's contracting officer's unilateral decision to preclude claims for extra work performed based solely on the fact that he was not privy to Western's agreement with the VA's now deceased contracting officer.

## CONCLUSION

Defendant has failed to prove this Court lacks jurisdiction over Plaintiff's claims or is entitled to judgment as a matter of law. Furthermore, Defendant has failed in its burden to show an absence of genuine issues of material fact in this case. For the foregoing reasons, and in light of Plaintiff's argument as stated above, Plaintiff respectfully requests the Court deny Defendant's Motion to Dismiss.

Respectfully submitted this 21st day of April, 2008.

[6] As currently mapped, the border between implied-in-law and implied-in-fact government contracts is not plain. Chavez v. United States, 18 Cl.Ct. 540, 546-47 (1989) (stating that the Federal Circuit in Amdahl granted implied-in-law contract relief while calling it implied-in-fact relief); H. Landau & Co. v. United States, 16 Cl.Ct. 35, 39-40 (1988), vacated on other grounds, 886 F.2d 322 (Fed.Cir.1989) (declaring that "the distinction may seem more one of degree than kind"). The traditional maxim that Tucker Act courts have jurisdiction of implied-in-fact contracts but not of implied-in-law contracts is not particularly useful, and may be simply a set of new clothes letting the emperor avoid harsh results by doing equity in contracts cases. Eastern Trans-Waste of Maryland, Inc. v. U.S., 27 Fed.Cl. 146,152 (1992)

THE HUSTEAD LAW FIRM
*A Professional Corporation*

By: s/
Patrick Q. Hustead, Esq.
Colorado Bar No. 16905
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
Telephone: (303) 721-5000
*Attorney for Plaintiff, Hartford Fire Insurance Company*

**CERTIFICATE OF SERVICE**

Pursuant Rule 5.1 of the Rules of the United States Court of Federal Claims, I hereby certify that on this 21st day of April, 2008, a true and correct copy of Plaintiff's Response to Defendant's Motion to Dismiss was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail address:

Douglas G. Edelschick, Esq.
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, D.C. 20530
Attn: Classification Unit, 8th Floor
Email: Douglas.Edelschick@usdoj.gov

s/
Susan M. Higgins

# Appendix

Affidavit of Mr. Casie Cde Baca

Tab 1 – Performance and Payment Bonds
Tab 2 – General Indemnity Agreement

Affidavit of Mr. Lyn R. Farley

Tab 1 – Letter from Raymond Tomori – Dated August 19, 2005
Tab 2 – March 5, 2007 draft claim
Tab 3 – Letter from Raymond Tomori – Dated May 13, 2007
Tab 4 – Letter from Raymond Tomori – Dated May 21, 2007
Tab 5 – Email from Raymond Tomori – Dated May 21, 2007
Tab 6 – Amended Certifcation

Exhibit A

Notice to Proceed Contract No. V554C-838
Notice to Proceed Contract No. V554C-839

Exhibit B

Email from Stacey Bekker – DCAA – Dated April 14, 2008