IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE CO.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 07-774C<br>(Judge Williams) |

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant, the United States, respectfully submits this reply in support of our Rule 12(b)(1) and 12(b)(6) motion dated March 7, 2008.[1]

I. HARTFORD'S ARGUMENTS CONCERNING EXHAUSTION LACK MERIT

In our opening brief, we demonstrated that the complaint should be dismissed pursuant to Rule 12(b)(1) because Hartford did not submit any certification of its claim to the contracting officer. In response, Hartford argues that it submitted defective certifications, which do not deprive the Court of jurisdiction if cured prior to entry of final judgment. Pl. Br. 13-17.

The certifications that pre-date the complaint state that they were submitted "on behalf of Western Sun Enterprises, Inc. in support of its claim" and are signed by Mr. Baca, who is identified as the "Authorized Representative of Western Sun Enterprises, Inc." Tomori Decl. ¶ 3 & Ex. 1 at 12-13. The plain language refutes Hartford's argument that these are certifications of Hartford's claim. Yet, Hartford argues that Mr. Baca, Western's president, could have certified Hartford's claim because the takeover agreements designate Mr. Baca as the site representative for Hartford. Pl. Br. 16-17. The takeover agreements grant Mr. Baca authority to "represent the Surety [Hartford] in dealings with the Government on a day to day basis to deal with

[1] Defined terms in our opening brief have the same meaning in this reply.

construction issues on the Project," and to "approve field changes to the project work in the amount not to exceed $2,500 per change with $10,000 aggregate limit." Compl. Ex. D ¶ 6. The takeover agreements do not authorize Mr. Baca to bind Hartford with respect to Hartford's claims. See 48 C.F.R. § 33.207(e) (certification must "be executed by a person duly authorized to bind the contractor with respect to the claim"). Accordingly, there is no certification of Hartford's claim that pre-dates the complaint.

Hartford did not submit any certification of its claims, prior to filing suit, notwithstanding the contracting officer's written reminder 11 months ago. Tomori Decl. ¶ 4 & Ex. 2. Hartford attaches to its brief belated certifications of its claims and argues that the Court should deem the exhaustion issue moot, Pl. Br. 17-18 & Farley Aff. Ex. 6, but the United States Court of Appeals for the Federal Circuit has held that jurisdiction must be evaluated as of the date when the complaint was filed. Sharman Co. v. United States, 2 F.3d 1564, 1569 (Fed. Cir. 1993).

The Court does not possess subject matter jurisdiction and the complaint should be dismissed without prejudice pursuant to Rule 12(b)(1).

## II. HARTFORD HAS NOT PRESENTED EVIDENCE OF A VALID ASSIGNMENT OF WESTERN'S CLAIMS

Our Rule 12(b)(1) motion raised a second independent ground for dismissal based upon the issue of standing. We demonstrated that the law does not permit a surety to usurp claims that belong to a contractor in the absence of a valid assignment. The complaint is devoid of factual allegations concerning a valid assignment agreement and, therefore, we argued that dismissal was appropriate to the extent Hartford purports to assert Western's claims in this action. In response, Hartford attached to its brief a document that purports to be an assignment agreement. Pl. Br., Baca Aff. ¶¶ 13-15 & Ex. 2. The Anti-Assignment Acts, however, render the purported assignment of Western's claims invalid. See Fireman's Fund Ins. Co. v. England, 313 F.3d

1344, 1349-50 (2002) (citing 31 U.S.C. § 3727 and 41 U.S.C. § 15); 31 U.S.C. § 3727(b) ("An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued.").

Hartford nevertheless asserts that "the Government … assented to this assignment and ratified it by modifying its payment obligations" in the takeover agreements "to include payment to Plaintiff instead of Western." Pl. Br. 24 (citing Compl. Ex. D). The law does provide an exception to the Anti-Assignment Acts when the Government elects "to assent to and recognize an assignment." E.g., G.L. Christian & Assoc. v. United States, 160 Ct. Cl. 1, 10, 312 F.2d 418, 423 (1963). The Federal Circuit held in Fireman's Fund, however, that a takeover agreement with a surety does not evidence assent by the Government to assignment of the contractor's pre-takeover claims to the surety. 313 F.3d at 1352 (affirming dismissal of surety's claims despite takeover agreement with Government and assignment agreement with contractor); see also Westech Corp. v. United States, 20 Cl. Ct. 745, 750 (1990) ("to expand equitable subrogation to allow a surety to assert a contractor's claims would, in effect, be allowing an assignment of a claim against the government in violation of the Assignment of Claims Act, 31 U.S.C. § 3727, 41 U.S.C. § 15 (1988)") (citations omitted).

Finally, Hartford argues that it has standing, pursuant to equitable subrogation principles, to assert its claims for payments it has made on the project. Pl. Br. 21-24. Hartford misses the point because our motion seeks dismissal of the complaint on standing grounds to the extent that Hartford is asserting Western's claims that pre-date the takeover agreement.

Accordingly, the Court should dismiss Hartford's complaint to the extent that it asserts claims on behalf of Western.

III. THE COMPLAINT FAILS TO STATE A COGNIZABLE CLAIM

A. Rule 12(b)(1) Motion: Counts I (Unjust Enrichment) & IV (Quantum Meruit)

Hartford acknowledges that the Court does not possess jurisdiction to entertain implied-in-law contract claims based upon unjust enrichment and quantum meruit theories. Pl. Br. 32-36. Harford argues, however, that its claims fall into an exception for implied-in-fact contracts. Id. The Federal Circuit has recognized this narrow exception only "in the very limited circumstance" when the Government contracts for goods or services pursuant to an express contract, but the Government refuses to pay because defects in the contract render it invalid or unenforceable. Perri v. United States, 340 F.3d 1337, 1344 (Fed. Cir. 2003). Hartford does not allege either that the takeover agreements are invalid or that the Government has declared them to be unenforceable. Accordingly, the exception does not apply.

"Further, an implied-in-fact contract cannot exist if an express contract already covers the same subject matter." Trauma Serv. Group v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997) (citing Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990)). Hartford alleges that there was an oral understanding concerning the location for steam piping that varies the terms of an express contract on the exact same subject. The law does not recognize such a contract. See id. Counts I and IV should be dismissed. See RCFC 12(b)(1).

B. Rule 12(b)(6) Motion: Counts II, III, and V

Hartford incorrectly construes our Rule 12(b)(6) motion as a motion for summary judgment. Pl. Br. 7-10, 26-27. We have not relied upon any affidavits, documents, or facts outside of Hartford's complaint for purposes of the Rule 12(b)(6) motion. Accordingly, the Court should apply the Rule 12(b)(6) standard of review that we discussed in our opening brief.

1. Count II – Breach Of Contract

In our opening brief, we noted that Hartford's complaint does not identify any provision of the Hot Water takeover agreement, the Hot Water contract, or the Steam takeover agreement that was breached. In its lengthy response, Hartford once again fails to do so. Instead, Hartford focuses upon allegations relating to the Steam contract. See Pl. Br. 27-28 (characterizing nonpayment allegations as pertaining to "those contracts," but citing "Compl. ¶¶ 56-64," which pertain only to the Steam contract). Hartford has failed to state a claim in Count II for breach of any provision in the Hot Water takeover agreement, the Hot Water contract, or the Steam takeover agreement, and these deficient claims should be dismissed. See RCFC 12(b)(6).

Hartford attempts in Count II to assert Western's claims for breach of the Steam contract. For the reasons already discussed above, Hartford lacks standing to assert Western's claims, and the claim in Count II for breach of the Steam contract should be dismissed. See FCFC 12(b)(1).

2. Count III – Breach Of Implied Covenant Of Good Faith And Fair Dealing

Hartford agrees that, to avoid dismissal of its breach of good faith claim, it "must allege facts, which if proven constitute malice or intent to injure the contractor." Pl. Br. 30-31 (citing D.V. Gonzalez Elec. & Gen. Contrs., Inc. v. United States, 55 Fed. Cl. 447, 457-58 (2003)). Hartford fails, however, to identify a single allegation in the complaint, much less one that would be sufficient to overcome the presumption of good faith and support an inference of malice. See Pl. Br. 30-32.

Hartford nevertheless cites a number of extraneous affidavits and asserts that the contracting officer engaged in "deception" when he refused to include provisions dealing with Western's existing claims in the takeover agreements. Pl. Br. 30. Any refusal by the contracting officer to include a provision on existing claims is irrelevant because the takeover agreements

expressly reserved Hartford's "existing legal rights." Compl. Ex. D at 2. Harford also cites the absence of a final decision as supposed indicia of bad faith. Pl. Br. 31-32. Now that Hartford has properly certified its claims, the contracting officer is required to issue a final decision within 60 days. Hartford's assertions may reflect a measure of frustration with the administrative process and the natural consequences of its own failure to certify its claims, but they do not even come close to a proper allegation of bad faith conduct by the Government.

Finally, Harford asserts, based upon an ambiguous and unverified email, that the contracting officer lied in his June 22, 2007 letter. Pl. Br. 30. That letter states that the contracting officer had requested an audit concerning the pertinent contracts. Tomori Decl. ¶ 5 & Ex. 3. Hartford attaches to its brief a string of emails between a representative of the audit agency and Hartford's counsel, in which the audit agency representative states that the audit was requested on January 31, 2008. [2] Pl. Br. Ex. B. Even if true (and it is not – the contracting officer renewed his June 2007 audit request in January 2008), and even if Hartford had included this allegation in the complaint (and it did not), administrative delay associated with an uncertified claim is not indicia of bad faith. Hartford does not explain what possible motivation a contracting officer would have to lie about minutia of this sort, much less demonstrate that the Government had an intent to injure Hartford.

There is no allegation in the complaint that the Government intended to injure Hartford. Count III would remain deficient even if Hartford were to amend the complaint to add the weak assertions contained in its brief. Count III should be dismissed for failure to state a claim.

[2] Hartford's counsel did not copy counsel for the United States on these communications.

3. Count V – Equitable Subrogation

There is no dispute that Hartford's equitable subrogation claim seeks payment of amounts, in excess of the contract balance, when the contract balance has been paid. Yet, Hartford argues that the well-established rule – limiting equitable subrogation claims to the contract balance – applies to payment sureties and not to performance sureties. Pl. Br. 32. In our opening brief, however, we cited several cases that apply the rule to both payment and performance sureties. Def. Br. 9 (citing Hartford Fire Ins. Co. v. United States, 40 Fed. Cl. 520, 521-22 (1998) (same plaintiff in this case served as performance and payment surety); Westech Corp. v. United States, 20 Cl. Ct. 745, 747, 749 (1990) (Fireman's Fund served as performance and payment surety); Balboa Ins. Co. v. United States, 775 F.2d 1158, 1159, 1161-63 (Fed. Cir. 1985) (Balboa served as performance and payment surety)). In any event, Hartford does not explain why it should be treated any differently from a payment surety when Western did all the work, Hartford financed the project to completion, and Hartford issued the payment and performance bonds. See Compl. Exs. C, D. Nor does Hartford explain why the risk of cost overruns should be shifted to the Government when Hartford was the party that issued payment and performance bonds for this fixed price contract. Count V fails to state a claim.

CONCLUSION

For these reasons, and the reasons set forth in our motion to dismiss, we respectfully request that the Court dismiss the Complaint.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Patricia M. McCarthy
Patricia M. McCarthy
Assistant Director

s/Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

May 1, 2008

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2008, a copy of foregoing “DEFENDANT’S REPLY IN SUPPORT OF MOTION TO DISMISS” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court’s electronic filing system. Parties may access this filing through the Court’s system.

s/Douglas G. Edelschick